Lyon *v.* Pittsburgh, Allegheny & Manchester Traction Company (et al., Appellants).

Argued October 2, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Henry G. Wasson, Jr.,* with him *E. P. Griffiths* and *Reed, Smith, Shaw & McClay,* for appellants.

*M. W. Acheson, Jr.,* of *Sterrett, Acheson & Jones,* with him *James R. Sterrett,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, November 27, 1933:

Upon a judgment recovered by him against the Pittsburgh, Allegheny & Manchester Traction Company, hereinafter called the Manchester Traction Company, plaintiff issued an attachment sur judgment, summoning the United Traction Company of Pittsburgh and the Pittsburgh Railways Company, as garnishees. Interrogatories were filed, and the garnishees' answers thereto were held sufficient to defeat plaintiff's rule for judgment upon them. Subsequently, and without discontinuing the prior writ, a second attachment sur judgment was issued against the same garnishees, which they unsuccessfully moved to quash. New and more searching sets of interrogatories were filed by plaintiff; each of the garnishees made answer thereto; the court below made absolute plaintiff's rules for judgment on the answers, and each garnishee is prosecuting one of the present appeals. The judgments must be affirmed.

The statement of questions involved, which limits the scope of the appeal (Oil City Nat. Bank v. McCalmont, 303 Pa. 306; Keller v. N. J. Fidelity & Plate Glass Ins. Co., 306 Pa. 124), raises but two points: (1) Should the court below have quashed the second writ of attachment, because the prior attachment had not been discontinued when the second was issued? and (2) Was the

garnishees' liability for the rent they agreed to pay, and which was attached herein, cancelled by instructions from the president of lessor (the defendant) who was also president of the lessee (the United Traction Company) to the accounting officer of both, to treat the rent as dividends on lessor's stock (all owned by lessee) to be retained by lessee, which procedure, though admittedly never authorized by any formal resolution of the board of directors of defendant, had, it is alleged, been acquiesced in for years?

For their first contention, appellants rely solely on Frazier v. Berg, 306 Pa. 317, 324, where we held that an attachment execution "binds all property belonging to the defendant or money due him, in the hands of a garnishee, which the latter receives up to the time of trial." We reaffirm that conclusion, but it is far from sustaining the contention of appellants. In Kase v. Kase, 34 Pa. 128, 131, it is said that attachment executions, "as collateral processes, are under the control of the court, as in other cases where several remedies are employed for the same debt or injury. And, as execution, this particular process is under the control of the court so far as to see that it is not used vexatiously, and that the garnishee shall run no risk of being compelled to make double payment." So, too, in Pontius v. Nesbit, 40 Pa. 309, where, as here, a second attachment was issued, we said (page 311) : "The only objection to it was the pendency of the prior attachment. That was no valid objection. Both writs of attachment were execution process; and the general rule is that you may have as many forms of execution as the law will afford, and may pursue them all at the same time until satisfaction be obtained on one of them." The situation in the two cases last cited was not exactly the same as here, but the controlling principles are the same, and will be here applied.

The fact that the court below and this court agree herein that appellants cannot, even on their own show-

ing, prevent a summary judgment, is conclusive proof that the issuance of the second writ was not a vexatious proceeding, and this was the important question on the motion to quash. No reason exists why a litigant should be forced to a jury trial in a situation like that which appears here, with the resultant delay in obtaining justice, and in expense to the Commonwealth as well as the parties, only to find at the trial that there is nothing for the jury to pass upon. The constitutional mandate that "justice [shall be] administered without......delay" (Constitution of Pennsylvania, article I, section 11) for-bids such a conclusion, and our judicial procedure, as far as possible, is made to accord with that provision. Indeed, as we will later show, the only way appellants escaped summary judgments on the first attachment was by asserting as a fact what was only their mistaken opinion, clearly made to appear so when the real situation, upon which they based that opinion, was forced upon the record by the more searching interrogatories filed on the second attachment.

The second question involved must likewise be answered antagonistically to appellants. By an agreement between defendant and the United Traction Company, the former "granted, demised and leased" to the latter, for a period of 950 years, all its (defendant's) "franchises and property however held and whether then or thereafter acquired, with the right to fix, collect and retain the tolls realized from operating the road," the latter agreeing to pay defendant "a net annual rental of $2.05 a share semiannually," and to pay also "the principal and interest accrued and to accrue, as the same becomes due and payable, of all bonds now outstanding," including therein "1,495 bonds (as yet unpaid) of the Manchester [Traction Company] each for the sum of $1,000 due October 1, 1930, with interest thereon at the rate of 5% per annum payable on the first day of April and October in each year. The intention of the parties hereto being that United [Traction Company] assumes

and agrees to pay bonds in the aggregate face value of $1,500,000, and the interest thereon as it matures." Plaintiff's judgments in these cases are for the principal "due and payable" on twenty of those bonds, with interest from the date they fell due, so that this appellant, if it pays, will only be doing exactly what it expressly agreed to do.

As already pointed out, appellants' only answer to this liability is that the stipulated annual rent of $2.05 per share, which was agreed to be paid to defendant, and is the basis of the judgment against it, was cancelled in the way hereinafter stated. In the answers to interrogatories in the first attachment, it was averred that there was an agreement to cancel that obligation, and this averment caused the court below to refuse judgment on the garnishees' answers. In the present attachment, appellants were forced to state exactly what the fact on this point was, and this showed there was no agreement whatever. The answers to the interrogatories state that "the said verbal agreement took the form of instructions from Mr. Callery, the then president of both the defendant and the garnishee, to this deponent, the then accounting officer of both companies, to treat the said rental of $2.05 a share as dividends on the stock of defendant [all of which was owned by this garnishee] to be retained by the garnishee, and that the said verbal agreement was not formally authorized by a resolution of the board of directors of the defendant." Nor, so far as appears, was it ever authorized, either formally or informally, by any competent authority.

A direction to treat the rental as dividends, especially as no time was mentioned, is far from being an agreement to thus alter the original written agreement, effective for the full term of the lease. The language above quoted would appear, instead, to be a bookkeeping direction from the president to the accounting officer covering a single dividend then due and unpaid. "To *treat* the rent as dividends on lessor's stock" means, at most, to so

treat that which was then due. It is not in fact to be a "dividend," but is to be *considered,* for bookkeeping purposes, as if it were; the obligation to pay, in the future, was unaffected. At that time the United Traction Company was bound to pay the Manchester Traction Company interest on the outstanding bonds of the latter company, for distribution to the bondholders, and also $2.05 per share on the latter's stock for distribution to its shareholders. Having paid the former, no reason existed why it should go through the form of also paying the latter, only to receive it back as owner of all of that stock. Under such circumstances, the equal cross liabilities of the two parties might well be made the subject of book entries only, and this is all that can be implied from the direction of the president above quoted. But when the bonds fell due and the principal thereof was not paid, as this appellant agreed it would be, the debt evidenced thereby became a paramount claim, and defendant would not have had the right to pay to this appellant a dividend on its outstanding stock, until it had first paid its debts to its bondholders: Branch v. Kaiser, 291 Pa. 543, 549. Certainly this appellant, as such sole stockholder of defendant, would not have had the right to juggle defendant's accounts so as to benefit itself to the injury of defendant's creditors. Equity would be swift to remedy such a wrong, if it were attempted. Happily, it was not attempted, except by the unavailing defense attempted to be interposed herein, and hence the judgment against the United Traction Co., as garnishee, was properly entered.

For the same reason that against the Pittsburgh Railways Company was proper. Four and a half years after the agreement between the Manchester Traction Company and the United Traction Company, the latter entered into an agreement with the Pittsburgh Railways Company, the other garnishee, by which the latter was given possession of all the assets derived from the Manchester Traction Company, and agreed "to pay all in-

terest upon loans and all rentals which The United Traction Company may be required to pay." This agreement was to "continue in force for the term of five years from that date [January 1, 1902], and shall continue in effect thereafter until terminated by three months' notice from one of the parties hereto." It has never been terminated. Of course, under such circumstances, the covenant to pay the rent ran with the land, and the Pittsburgh Railways Company, as assignee of the lease, became liable to pay to the Manchester Traction Company "the rent in the manner and on the terms and conditions set forth in the lease": Johns v. Winters, 251 Pa. 169; Ottman v. Nixon-Nirdlinger, 301 Pa. 234.

The Pittsburgh Railways Company does not appear to dispute this except in so far as it alleges it is not yet liable upon this clause of its agreement, because the United Traction Company has not paid the rental to the Manchester Traction Company. Not only is this argument unavailable for the reason stated, but also because it is built on the erroneous contention that "may be required to pay," specified in the lease, means the same as "has in fact paid." That is exactly what it does not mean. It simply refers to what the United Traction Company is required to pay by the terms of the agreement between it and the Manchester Traction Company, just as the immediately preceding clause in the same agreement, whereby the Pittsburgh Railways Company agrees to pay all taxes "which by any present law or by contract the United Traction Company may be required to pay," contemplates the requirement of payment by any present law or contract, not the fact of actual payment.

The two judgments of the court below are affirmed.