PUBLIC SERVICE COMMISSION OF PENNSYLVANIA v. PHILADELPHIA RAPID TRANSIT CO. et al.*

WILSON v. SAME.

Nos. 5954, 5955.

Circuit Court of Appeals, Third Circuit.

Dec. 20, 1935.

Rehearing Denied Feb. 19, 1936.

*Certiorari denied Citizens Passenger Ry. Co. v. Public Service Com'n, 56 S. Ct. 938, 80 L. Ed. ―.

482

ors, known as the "Underliers" for use and occupancy by the debtor of the property of the underliers. One of the appeals is by S. Davis Wilson, as controller of the city of Philadelphia and as representative of the city council of that city. The other is by the Public Service Commission of Pennsylvania, hereinafter called the commission.

The property occupied and used by the debtor consists generally of about 600 miles of trolley track.

The facts out of which the questions here involved arose, are, as stated by counsel in their briefs, substantially as follows:

On October 1, 1934, the debtor, a Pennsylvania corporation, filed its petition under 77B of the Bankruptcy Act, as added by Act June 7, 1934, 48 Stat. 912, see 11 U.S.C.A. § 207, in which it alleged that it operated a street railway system of surface, elevated, and underground railways. It was averred in the petition that the debtor was solvent, but was unable to meet its current liabilities as they became due, particularly its rentals to the underliers, and that it desired a readjustment of its obligations and fixed charges so that it could as a public service company continue to render its customary public service. At the time the petition was filed it was alleged that rentals to the amount of $1,512,062 were due and unpaid and there would be due $1,791,455.-80 between September 28 and November 30, 1934, for additional rents.

Richard J. Beamish, of Harrisburg, Pa., Louis E. Levinthal, Sp. Counsel, of Philadelphia, Pa., Charles J. Margiotti, Atty. Gen. of Pennsylvania, and S. Davis Wilson, of Philadelphia, Pa., for appellants.

Frederic L. Ballard, Francis B. Bracken, W. W. Montgomery, Jr., M. B. Saul, William E. Mikell, Jr., John J. Sullivan, and Joseph Gilfillan, all of Philadelphia, Pa., for appellees Philadelphia Rapid Transit Co. and others.

Before DAVIS, Circuit Judge, and WATSON and FORMAN, District Judges.

DAVIS, Circuit Judge.

This case is here on motions to dismiss two appeals from an order of the District Court awarding $700,000 to be distributed by the Philadelphia Rapid Transit Company, the principal debtor, hereinafter called the debtor, to twenty-one lessor companies as additional debt-

On November 20, 1934, the court entered an order to the effect that the petition had been filed in good faith; that it complied with section 77B; that the debtor should continue to hold, operate, and manage, under and subject to the control of the court, the property owned by it, or in its possession, or that might come into its possession, and to pay operating expenses including all payments due the city, and to hold any moneys which might come into its possession and not expended for any of the purposes mentioned in the order "for further payments to be made by and on account of the debtor and for such payments on account of rental and use of leased railways" as the court might thereafter authorize.

On November 28, 1934, the city solicitor of the city of Philadelphia entered his appearance for the city as a creditor of the debtor.

The city council passed a resolution on the same day authorizing the city controller to participate in the proceedings in the District Court in order to protect the interests of the city. On December 21, 1934, the city controller entered his appearance.

The court entered an order directing that the resolution be filed, accorded the controller the right to participate in the proceedings "as a fiscal officer of the said County and City" and recognized and appointed him "as the adviser of the court on the fiscal aspects of any Plan of Reorganization which may be filed in this cause by the Debtor."

On December 11, 1934, the court rescinded that order and entered another of similar import.

The debtor on December 4, 1934, submitted to the court a plan of reorganization which it ordered filed.

The plan provided for the merger and consolidation of the debtor and underliers. The holders of stock and stock trust certificates of the underlier companies were to receive in exchange for their securities new securities to be issued by the consolidated company. The annual interest on these new securities was approximately $2,000,000 less than the rentals then in existence.

In December, 1934, the underliers filed petitions in the court asking leave to file a plan of reorganization in connection with or as a part of the plan of reorganization of the original debtors.

On January 4, 1935, the commission filed its certificate "that the public interest is affected by the plan of reorganization of the Philadelphia Rapid Transit Company and its affiliates filed in said court on December 4, 1934."

The city of Philadelphia on January 18, 1935, through the city solicitor, filed its petition to intervene as a party. The debtor filed an answer on January 26, 1935, neither consenting nor opposing. On February 11, 1935, the court denied the petition and on the same day filed an order allowing the debtor to remain in possession "without change, impairment or interruption."

On March 15, 1935, the commission, upon submission of the plan of reorganization to it by the debtor, filed its second certificate that the public interest was affected by the plan of reorganization.

Six petitions were filed by the underliers on April 30, 1935, praying for an order authorizing payment out of an accumulated fund of $1,400,000 realized from the operation of the property by the debtor to them on account of the rental for their property used and occupied by the debtor under the control of the court.

S. Davis Wilson as controller and representative of the city council filed an answer objecting to the allowance.

The city solicitor filed an answer objecting to any payments except as junior to payments to be made to the city of Philadelphia and prayed that no payments be made to the underliers under the unapproved plan of reorganization; that no payments be made to the underliers which might have the effect of confirming the underlying leases or the plan of reorganization and that no payments be authorized for any claim except use and occupancy as the same might be a proper administration expense.

The commission filed a "suggestion" that any order made on the petitions would effectuate the plan of reorganization before the commission had reasonable opportunity to pass upon it and in advance of any final action of the court; that such an order would·seriously change the status of the debtor and underliers which had become fixed upon the approval of the debtor's petition on November 20, 1934; that such payment would seriously jeopardize the financial position of the debtor as an operating utility and threaten its continued and uninterrupted service; that the claims of the underliers were for contract obligations and not for use and occupancy, and that the reasonableness of the claims of the underliers in relation to the value of their property or the net earnings therefrom in the hands of the debtor had not been averred or established.

Upon notice to counsel and public notice by advertisement the District Court sitting in banc heard the petitions on May 15, 1935, and on May 29, 1935, made an ad interim allowance of $600,000 to the underliers for use and occupancy. The payment was actually made on June 15, 1935. The decree provided that the matter of further payments might be submitted to the court from time to time.

On September 11, 1935, the debtor filed its petition for further payment as compensation for use and occupancy of the

leased properties. On the same day the court entered a decree making a further allowance of $700,000 to be paid to the holders of the outstanding stock and trust certificates of the underliers.

S. Davis Wilson as representative of the city council and as Controller on September 19, 1935, filed his petition for a temporary order restraining the payments authorized in the decree. The court on the same day suspended its order of September 11th and allowed a rule upon the debtor to show cause why the decree should not be set aside.

The commission on September 21, 1935, filed exceptions to the order of September 11, 1935, on the ground that the court erred in making the allowance of $700,000 ex parte, without notice to the commission, without first having heard and determined what properties, if any, of the underliers the debtor was using and occupying and without specifying the period of time the property was used and occupied for which the allowance was made.

On September 24, 1935, the debtor filed a motion to dissolve the injunction entered September 19, 1935, and to dismiss the exceptions of the commission filed September 21, 1935.

This motion was heard on September 27, 1935, and three days later, September 30, 1935, the court dissolved the restraining order and dismissed the exceptions of the commission.

Appeals were taken by S. Davis Wilson and the commission from the decree of September 30, 1935, and of September 11, 1935.

The debtor and underliers filed motions to dismiss the above appeals.

Various and diverse contentions have arisen and been asserted out of the facts. The appellees say that:

1. The appellants, S. Davis Wilson and the commission, have no standing to appeal from this order. If that is true, the appeals must be dismissed, however meritorious they may be.

Both appellants are actually and deeply interested in the case, but neither has pursued strict procedure for intervention. This is a matter, however, under section 77B, and must proceed under the provisions of that act and the broad principles of equity.

S. Davis Wilson is controller of the city of Philadelphia and the authorized representative of the city council of that city. The city has many millions of dollars invested in the debtor, and, consequently, is deeply concerned over the proposed plan of reorganization.

As controller, Wilson had appeared in the litigation of the debtor from time to time. In order to protect the investment of the city in the debtor, the city council on November 26, 1934, passed a resolution which among other things provided as follows: "Resolved, by the Council of the City of Philadelphia, That it is the sense of the Council that the best interests of the City of Philadelphia and its investments in the said traction system will best be conserved by having the said Controller continue to participate in the proceedings in the said District Court as the fiscal officer of the County and City of Philadelphia in order that the City Council may be kept fully informed with respect to said proceedings."

On November 28, 1934, the District Court entered the following order:

"1. That the Clerk be and he hereby is directed to file said resolution as a part of the record in this cause.

"2. That pursuant thereto the Controller of the County and City of Philadelphia be and he hereby is accorded the right to participate in the proceedings in this cause as a fiscal officer of the said County and City.

"3. That the said Controller be and he hereby is recognized and appointed as the adviser of the Court on the fiscal aspects of any Plan of Reorganization which may be filed in this cause by the Debtor."

The above order was rescinded on December 11, 1934, and the following order in lieu thereof was entered:

"1. The City of Philadelphia as a creditor of the Debtor is given leave to be heard in the above proceedings by the City Solicitor or any designated representative.

"2. City Council having by Resolution adopted November 26th, 1934 designated the City Controller to be its representative, leave is given him to be heard as such representative.

"3. The City Controller being an officer of the City is likewise given leave to be heard as such official."

While no express order of intervention was entered by the court, the above order was the equivalent thereof, and was generally so regarded. Thereafter the appellant, Wilson, took part in the various proceedings.

■ Did the commission have standing to appeal from the order of September 11, 1935, allowing $700,000?

As above stated, this is a proceeding under section 77B of the Bankruptcy Act for the reorganization of a public utility company wholly intrastate in character and subject to the regulation of the commission. In subsection (e) (2) (11 U.S.C.A. § 207 (e) (2) it is provided that "In case the debtor · is a utility subject to the jurisdiction of a regulatory commission or commissions or other regulatory authority or authorities, created by the laws of the State or States in which the properties of the debtor are operated, a plan of reorganization shall not be confirmed until (a) it shall be submitted to each such commission or authority having regulatory jurisdiction over the debtor, (b) an opportunity shall be afforded each such commission or authority to suggest amendments or objections to the plan, and (c) the judge shall consider such amendments or objections at a hearing at which each such commission or authority may be heard. In case the debtor is a public utility corporation wholly intrastate in character no court shall approve any plan of reorganization if the regulatory commission of such State having jurisdiction over such public utility certifies that the public interest is affected by said plan, unless said regulatory commission shall first approve of said plan as to the public interest therein and the fairness thereof."

The act thus provides that in case the debtor is a public utility corporation wholly intrastate in character no court shall approve any plan of reorganization if the regulatory commission of such state having jurisdiction over such public utility certifies that the public interest is affected by the plan unless the regulatory commission shall first approve of the plan as to the public interest therein and the fairness thereof. The commission has certified to the District Court that the public interest in this case is affected by the plans filed by the, debtor and underliers.

It contends that the filing of the certificate of public interest in the court constitutes intervention in the case within the meaning of the act in the sense that it entitled it to approve or disapprove as to the public interest and fairness of the plan and as to the action of the court in relation thereto.

The commission in substance contends that it was unfair and improper for the court to make an order allowing $700,000 for use and occupancy directly to the holders of stock and stock trust certificates of the underliers which allege that they are insolvent or unable to meet their debts as they mature .in the absence of any allegation or proof as to the ownership, description, rental value, nature or period of time of the use and occupancy of the property for which compensation was allowed.

The commission further urges that it has standing in these proceedings to appeal from the order because the allowance made by the court is identical with, and follows the ratio of, the proposed plan of reorganization and to that extent, at least, constitutes the approval of the plan without first obtaining the approval of the commission.

The court disavowed any intention of thus approving the plan or adjudicating the questions involved therein.

The fact, however, that the schedule of distribution contained in the order exactly followed that of the plan filed by the debtor furnishes a reasonable ground for the conclusion that the order was in fact the approval by the court of the plan and gave the commission the right to appeal. A previous order for allowance of $600,000 had likewise been made. When the second order was made, if the commission by appeal or otherwise had not protested, it is evident that further orders of allowance would have continued, and thus the provision of the statute making the approval of the commission necessary when a certificate of public interest had been filed would have been rendered of no effect.

We are aware that property may not be used and occupied by receivers or trustees in bankruptcy without compensation therefor, but creditors and those interested in the proceedings are entitled to know exactly what property is used and occupied, and the period and character of the use and occupation. The failure to give this information constitutes a valid objection to the allowance of compensation.

Appellees say that the court had ample data on which to base the allowance when the magnitude of the system, the existing leases and the available earnings are considered. Reference is made by them to the fact that no appeal was taken from the order of the court of May 29, 1935, allowing $600,000 for use and occupancy with precisely the same proportionate allocation as was made in the order allowing $700,000.

It may be that the appellants considered the magnitude of the system and did not appeal from the first order allowing $600,000, thinking that before or by the time other orders were made, the desired information would be given or the plan would be approved.

■ At any rate, the failure to object to or appeal from the first order for any reasons which to the appellants seemed sound did not bar them from appealing from the second order; nor does it furnish any ground as to why they should not have done so. The plan may not be approved piecemeal by the court, each order being in effect the approval of the entire plan without the approval of the court. The commission does not have to wait until numerous such allowances are made before it appeals. It has the right to appeal from any order which under a reasonable interpretation is tantamount to the approval of the entire plan by the court.

2. Another question raised by the underliers in their motion to dismiss the appeals is that the order is interlocutory and may not be reviewed by this court on appeal.

■ This question seems to have been abandoned, for it was not argued orally or in the brief. It is well settled, however, that with few exceptions, not here material, this court does not have jurisdiction to review on appeal interlocutory orders. Shumaker v. Security Life & Annuity Co. (C.C.A.) 159 F. 112; Hunt v. United States (C.C.A.) 53 F.(2d) 333; Cole v. Rustgard (C.C.A.) 68 F.(2d) 316; In re Tiffany, 252 U.S. 32, 40 S.Ct. 239, 64 L.Ed. 443. But this case is in bankruptcy and section 24b of the Bankruptcy Act as amended by the Act of May 27, 1926 (11 U.S.C.A. § 47 (b), provides: "The several circuit courts of appeal * * * shall have jurisdiction in equity, either interlocutory or final, to superintend and revise in matter of law (and in matter of law and fact the matters specified in section 25 [section 48 of this title]) the proceedings of the several inferior courts of bankruptcy within their jurisdiction. Such power shall be exercised by appeal * * * in the discretion of the appellate court."

Section 25a as amended (11 U.S.C.A. § 48 (a), provides:

"Appeals, as in equity cases, may be taken in bankruptcy proceedings from the courts of bankruptcy to the circuit courts of appeal of the United States * * * in the following cases, to wit: * * *

"(3) From a judgment allowing or rejecting a debt or claim of $500 or over."

It would seem that the order, though interlocutory, is appealable under the above sections. Remington on Bankruptcy (4th Ed.) § 3771, p. 148. It is a question as to whether or not the order which makes no provision for the return of the money is not really final. City of Eau Claire v. Payson (C.C.A.) 107 F. 552.

It was frankly admitted by the appellants at the argument that it was impracticable to secure the return of the money which had already been allowed and paid out, but that does not justify the affirmance of an improper order.

The order is accordingly reversed.

### On Petition for Rehearing.

These cases are before us on petition for reargument.

In deciding the questions raised in the petition, it must be kept in mind that this is a proceeding in bankruptcy under section 77B of the Bankruptcy Act and must be disposed of in accordance with the provisions of that act under the applicable broad principles of equity.

Counsel for appellees contend that we erred in holding that these payments were in effect the approval of the plan of reorganization filed by them.

■ Courts act by orders, decrees, and judgments; and in reviewing these, consideration must be given to what they actually accomplish. The plan filed herein is rather long, involved, and complicated. The payments are ad interim for use and occupation and anticipate further and full allowances. They were not made in accordance with the contract rentals, but on some other basis and in accordance with some other plan. As a matter of fact, they

were made in exact accord with the detailed provisions of this complicated plan. To say that this happened by chance does not commend itself to the intelligence of reasonable minds. There is no explanation of just how these payments came to be made in accordance with the plan of reorganization before the court. In the absence of any explanation, we are forced to the conclusion that they were in effect the approval of the plan. They did indirectly what could not be done directly. It was tantamount to the approval of the plan by the court without the consent of the Public Service Commission of Pennsylvania which cannot be done under the provision of 77B of the act.

From the order directing the payment of $700,000, the Public Service Commission under the facts of this case had the right to appeal. It may be, as suggested by appellees, that the function of the commission is to approve or disapprove the plan, after due and proper hearing. But suppose the court, after the certificate of public interest had been filed by the commission, had proceeded without consulting the commission, and without its consent and over its objection, and had approved the plan as a whole, could the commission not have appealed from the order approving the plan? We think it could.

The court could not, by ignoring the commission, take from it the rights given to it by the act, but this is exactly what it did, and the only way in which the commission could protect itself and maintain its rights was by a speedy appeal from the order directing payment. The legal effect was the same whether the court approved the plan as a whole or in part, by piecemeal.

■ But the act, within the four corners of which this case must be decided, does not confer any rights upon the city controller, or the representative of the city council. Neither did the District Court make him a party or confer upon him the right of appeal. It gave him the right to be heard as controller and representative of the city council only. Upon further reflection in the light of the argument of counsel in this petition, we are of opinion that S. Davis Wilson as city controller or representative of city council had no standing before this court and no right to appeal. If the court below wanted to hear him as adviser, controller, or representative, it could do so,

but this privilege did not give him the right to appeal as a party from the decree of the court. Consequently his appeal will be dismissed.

■ As to the allowances for the use and occupation of the properties leased by the Philadelphia Rapid Transit Company from the underliers, we held, and reaffirm our position, that creditors in a bankruptcy proceeding are entitled to know what property was used and occupied and the extent of that use and occupancy before allowances may be made therefor, and this is particularly so in view of the contention that the debtor is paying for property which it does not occupy or use.

In opposition to this position and in support of the allowances made, counsel cite cases to the effect that receivers and trustees should be given a reasonable time to elect whether or not they will affirm the lease and that during this period they should pay the stipulated rental. Those cases are inapplicable here, because the filing of the plan was in effect a disaffirmance of the leases, and the appellees are not asking the court to make allowances in accordance with them. They say that the Philadelphia Rapid Transit Company, being "now in possession of the underliers' property, whether or not there has been an election to adopt the leases, is liable for the rent accruing thereunder." That is true, but in this bankruptcy proceeding creditors are entitled to know what that property is and what use is being made of it. The underliers, like any other person in any bankruptcy proceeding, are entitled to be justly and fairly paid for the use and occupancy of their property; but like any other person, they should and must show what that property is and that it is occupied and used. They occupy the same position as any other person, whose property is being used by receivers and trustees in bankruptcy, and like any other person, they cannot expect a court of bankruptcy to make allowances until they show just what property is being used and occupied and the extent thereof. Until a court knows that, how can any fair and just allowance be made? When these are shown, surely proper allowances will and should be made, but until then, can they in good faith ask or demand allowances, when no step has been taken to supply the court with this information? If any one in the meantime suffers or is inconvenienced the court is sorry, but the fault cannot be charged to it.

The appeal of S. Davis Wilson is dismissed, and the petition for rehearing of the appeal of the Public Service Commission is denied.