In re REORGANIZATION OF PITTS-
BURGH RYS. CO. et al.
Nos. 7271, 7283.

Circuit Court of Appeals, Third Circuit.
April 30, 1940.

Wm. Alvah Stewart, Jr., City Sol., Richard B. Tucker, Jr., and Leon Wald, all of Pittsburgh, Pa., for City of Pittsburgh, appellant.

A. E. Kountz and Lewis M. Alpern, both of Pittsburgh, Pa., for Tort Creditors' Committee, Appellant.

J. Henry O'Neill, J. Garfield Houston, and Blaxter, O'Neill & Houston, all of Pittsburgh, Pa., for W. D. George, Thomas M. Benner, and Thomas Fitzgerald, trustees.

Philip A. Fleger and W. A. Seifert, both of Pittsburgh, Pa., for Philadelphia Co. and certain underliers.

Lee C. Beatty and Richard W. Ahlers, both of Pittsburgh, Pa., for Citizens Traction Co., Penn Street Ry. Co., and Suburban Rapid Transit St. Ry. Co.

Hill Burgwin, of Pittsburgh, Pa., for Allegheny Traction Co. and Millvale Etna & Sharpsburg St. Ry. Co.

John M. Reed, of Pittsburgh, Pa., for Samuel H. Putnam.

Before MARIS, CLARK, and JONES, Circuit Judges.

MARIS, Circuit Judge.

These are appeals from an order of the District Court for the Western District of Pennsylvania directing the trustees of Pittsburgh Railways Company, a debtor in reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., and of Pittsburgh Motor Coach Company, a subsidiary, to pay as an administration expense taxes assessed against fifty-five underlying companies whose properties under leases and operating agreements form part of the Pittsburgh Railways System. A schedule of the taxes involved in this appeal is set out below.[1]

None of the taxes listed in the schedule was assessed against the debtor or its subsidiary and none bears any relation to the properties leased by the underliers to the debtor. Each is a tax upon the income of the underliers or upon their capital stock or securities. In other words, although they are taxes due and owing by the underliers to the state and federal governments, they are not taxes due and owing by the debtor. The sole obligation of the debtor with respect to these taxes arose under the leases and operating agreements with the underliers which provided that the debtor should pay all taxes assessed against the underliers. The obligation of the debtor to pay the taxes was an additional consideration for its use of the underliers' property, and, therefore, as to it a rental obligation rather than a tax liability.[2]

The appellees argue that since the properties of the underlying companies are in the possession of the trustees of the debtor and are being used and operated by them with properties of the debtor as a unified system the taxes of the underlying companies are, in effect, taxes of the unified system and are, therefore, operating and administrative expenses of the trustees.[3] The district court adopted this view.

---

[1] Unpaid balances of Federal Income Taxes of the underliers for the year 1937 ................... $ 97,412.14

Federal Income taxes for the year 1937 withheld at source in respect to interest upon the obligations of underliers ............ 6,850.01

Pennsylvania Corporate Net Income taxes of the underliers for the year 1937 .................... 27,639.59

Federal Income taxes of the underliers for the year 1938 ....... 50,501.26

Federal Income taxes for the year 1938 withheld at source with respect to interest upon the obligations of underliers ........... 2,668.08

Pennsylvania Corporate Net Income taxes of the underliers for the year 1938 .................... 18,335.72

Pennsylvania Capital Stock taxes of the underliers for the year 1938 ............................. 64,294.57

Pennsylvania Corporate Loans taxes for the year 1938 in respect to interest upon the obligations of the underliers ....... 17,502.56

Total ......................... $285,203.93

[2] Hardeman v. Hendrix, 5 Cir., 29 F.2d 738.

[3] The trustees state: "We do not contend these taxes are payable because the debtor contracted to pay them. While such contracts exist, thus far the Trustees have not affirmed them and may never do so. Whatever might be the effect of affirmance of the operating agreements and leases on the obligation of the

■ We are asked to ignore the legal relationships existing between the Philadelphia Company,[4] the debtor and the underliers[5] and their separate corporate identities and treat them all as one unified transportation system. For all practical purposes, the appellees argue, the separate identity of the underlying corporations has been lost. We are not impressed with the equity of this plea. Under other circumstances the appellee, the Philadelphia Company, has not sought to ignore its corporate identity but has taken refuge behind it to escape liability upon an underlier's bond,[6] as has also the debtor[7] and an underlier.[8] The appellees, the Philadelphia Company and the underliers, appear not too sincere in their contention that the corporate form is merely fiction when it is observed that the underliers have refrained from themselves filing petitions for reorganization, with the result that the only corporations in the system which are in process of reorganization are the debtor and its subsidiary. The Trustees are not trustees for the Philadelphia Company nor for any of the underliers. Neither the past history of the system nor the present state of the reorganization proceedings would, we think, justify our ignoring the existence of the separate legal entities which compose that system.

■ A number of the taxes here involved became due prior to the filing of the petition for reorganization on May 10, 1938. These are the federal income taxes for 1937 and federal income taxes for 1937 withheld at source, due March 15, 1938[9] and the Pennsylvania net income taxes for 1937, due April 15, 1938.[10] Even though the taxpayer was given the option to pay these taxes in installments the taxes were actually due on the dates mentioned, which were the dates fixed by law for filing the tax returns. The failure of the debtor to pay these taxes was a breach of the leases and operating agreements and the amounts then due became simple contract claims against the debtor, due when the debtor's petition was filed.[11] As to these claims the underliers must take their position with all other general creditors.

A different question is presented by the taxes for 1938 since they became due while the trustees were actually administering the debtor's estate and making use of the properties of the underliers in such administration.

■ The trustees have no obligation to pay the rentals due under the leases, as such, unless and until they affirm the leases and operating contracts. They have a reasonable time within which to affirm or disaffirm. During the interim their sole obligation is to pay the lessors a reasonable amount for the use and occupation of the properties actually in use.[12] This rule, which was originally laid down in railroad receiverships in equity, applies to the reorganization of a street railway under Section 77B of the Bankruptcy Act, 11 U.S. C.A. § 207.[13] If an interim payment is

---

Trustees to the underliers, we submit that the obligation of the Trustees to the taxing authorities is not governed by those contracts or by any action that might be taken by the Trustees with respect to them. Nor do we contend these taxes are payable as compensation for use and occupancy of the underliers' properties by the Trustees."

4 The Philadelphia Company is the holding company which owns all the stock of the debtor.

5 The debtor has an investment of approximately $32,000,000 in the stock of the underliers.

6 Allen v. Philadelphia Co., D.C., 265 F. 807, affirmed, 3 Cir., 265 F. 817. Cf. Ambridge Borough v. Philadelphia Co., 283 Pa. 5, 129 A. 67, 39 A.L.R. 1064.

7 Second Ave. T. Co. v. United Traction Co. of Pittsburgh, 328 Pa. 257, 195 A. 25.

8 Lyon v. Pittsburgh A. & M. Tr. Co., 312 Pa. 584, 169 A. 229.

9 Revenue Act of 1936, c. 690, § 53(a) (1), 26 U.S.C.A. Int.Rev.Code § 53(a) 1; Act of May 10, 1934, c. 277, § 143(c), 26 U.S.C.A. Int.Rev.Code § 143(c).

10 Pennsylvania Act of May 16, 1935 P.L. 208, § 4, as amended, 72 P.S.Pa. § 3420d.

11 Philadelphia & Reading Coal & Iron Co. v. Van Deusen, 3 Cir., 103 F.2d 869.

12 United States Trust Co. v. Wabash Railway, 150 U.S. 287, 14 S.Ct. 86, 37 L. Ed. 1085; Pennsylvania Steel Co. v. New York City Ry. Co., 2 Cir., 198 F. 721; American Brake Shoe & Foundry Co. v. New York Rys. Co., 2 Cir., 282 F. 523; Westinghouse Electric & Mfg. Co. v. Brooklyn Rapid T. Co., 2 Cir., 6 F.2d 547.

13 In re Connecticut Co., 2 Cir., 95 F. 2d 311, certiorari denied sub nomine, Connecticut Railway & Lighting Co. v. Connecticut Co., 304 U.S. 571, 58 S.Ct. 1041, 82 L.Ed. 1535.

made it is ordinarily held that it should not be in an amount in excess of the net earnings derived from the operation of the lessor's properties.[14]

It may be, as argued by the appellees, that in this case it is impossible fairly to allocate the net earnings of the system to the various leased lines. In that case it may be necessary for the court to fix an allowance for use and occupation upon the basis of the fair value of the property actually used by the trustees. This we need not now determine for the court must first determine the property which is being used, the extent of its use and the net earnings being derived from it or its value.[15] Until that is done any order made by the court would have no factual basis and would, therefore, be arbitrary and possibly confiscatory.

 It is urged that unless the taxes are paid immediately irreparable harm may result, since the taxing authorities may distrain. If and when this situation arises and the district court deems such a distraint undesirable and likely to hinder the reorganization, it may utilize the powers conferred upon it and enjoin all the proceedings to enforce the lien of any distraint made upon any property in which the debtor has an interest.[16] However, the record before us does not justify a conclusion that the taxing authorities intend to distrain without leave of court. The court may properly withhold such leave pending determination of such vital questions to the reorganization as whether the trustees plan to affirm or disaffirm the leases, which of the underliers are to become part of the new transportation unit and whether the debtor's counterclaims against the underliers to which reference is made in the master's report are enforceable.

An impressive array of authorities is cited by the appellees to the effect that taxes are to be given preference in a proceeding such as this. We, however, are dealing with a contractual liability of the debtor, whereas in each of the cited cases[17] the obligation was a genuine tax liability of the corporation itself and not as in the present case an obligation to pay the taxes of some other corporation.

The appellees give much weight to the fact that the trustees have in their possession funds derived, as they allege, almost wholly from the operation of the underliers' property, sufficient to pay all the taxes. They contend that it is wasteful of the trust estate to permit interest and penalties to accumulate by reason of non-payment of these taxes. If, however, by reason of the ultimate disaffirmance of the leases the taxes should never become payable, as such, out of the debtor's estate and if the amount claimed as taxes should be found to exceed the sum justly due for use and occupation the trustees would be in error in so applying the funds in their possession. Furthermore the debtor may succeed in substantiating its claims against some of the underliers.

 Enough has been said to demonstrate that the order of the district court cannot be sustained upon the record before us. It is accordingly reversed.

---

[14] See cases cited in note 12, supra.

[15] Public Service Commission v. Philadelphia Rapid T. Co., 3 Cir., 82 F.2d 481.

[16] 11 U.S.C.A. § 516(4).

[17] Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136; Coy v. Title Guarantee & Trust Co., 9 Cir., 220 F. 90, L.R.A.1915E, 211; Bear River Paper & Bag Co. v. City of Petoskey, 6 Cir., 241 F. 53; MacGregor v. Johnson-Cowdin-Emmerich, Inc., 2 Cir., 39 F.2d 574; Hardee v. American Security & Trust Company, 64 App.D.C. 259, 77 F.2d 382.