In re PITTSBURGH RYS. CO. et al.

No. 7372.

Circuit Court of Appeals, Third Circuit.

Feb. 4, 1941.

John Joseph O'Connell, of Pittsburgh, Pa. (Walter P. Smart, of Pittsburgh, Pa., on the brief), for appellant.

J. Henry O'Neill, of Pittsburgh, Pa. (J. Garfield Houston, Wells Fay, and Blaxter, O'Neill & Houston, all of Pittsburgh, Pa., on the brief), for W. D. George, Thomas M. Benner, and Thomas Fitzgerald, Trustees, appellees.

Before MARIS, CLARK, and GOODRICH, Circuit Judges.

CLARK, Circuit Judge.

The County of Allegheny (in the State of Pennsylvania) owns inter alia 23 bridges and the approaches thereto. Over these bridges run the tracks, cars, buses, and other facilities of the debtor company. This company has been in reorganization [1] in the court below since May 10, 1938. We are already officially apprised of some of the legal phases thereof. [2] Prior to this date, the Railways had agreed with the County to pay and had been paying rentals for these bridges. The trustees in reorganization [3] had taken no action either by way of affirmance, denial, or renewal with respect to these existing or expired contracts. Nevertheless, their continued use was essential to the debtor's operations. For that use, the trustees were billed by the County in the amount of $130,706.39. The former naturally made no contention that they should have any free occupancy of the County property. They did regard the amount claimed as more than the "direct costs and expenses" appropriately payable by a bankrupt corporation. After talks between the trus-

---

[1] Bankr.Act § 77B, 11 U.S.C.A. § 207; cf. 11 U.S.C.A. § 501 et seq.

[2] In re Reorganization of Pittsburgh Rys. Co., 3 Cir., 111 F.2d 932.

[3] Appointed June 14, 1938, Bankr.Act § 77B, sub. c, 11 U.S.C.A. § 207, sub. c, cf. 11 U.S.C.A. § 556.

tees, the County commissioners, and their respective attorneys, a settlement of the engineering question involved was reached, and the County indicated its willingness to accept the amount of $66,243.80 for the period of June 1, 1938 to May 31, 1939. It was understood that this claim should be presented to the reorganization court in the form of petition by the County and answer by the Trustees requesting the court's authorization of payment.

 In the meantime and during the period of these negotiations, the trustees were under the necessity of carrying out their obligations vis a vis the court that appointed them. There is no more fundamental duty imposed on those who hold property for others than that of rendering an account of its management. [4] The principle applies, of course, to those intrusted with property by courts under operation of law and so applies to the trustees in the case at bar. [5] In compliance therewith and on August 22, 1939, the latter filed two accounts with the court. The first covered the period from the filing of the petition to their appointment and so indicated what was chargeable to them. The second was an annual accounting of the first year of their management. Upon the stating of this last account, the County abandoned its original intention of filing a petition for payment of its claim and adopted the theory whose disapproval by the special master and the learned district judge has led to this appeal. This change of front took the form of an exception to the accounts on the ground that they did not show any payment or allowance for payment to the County.

 We think that the County labors under a legal misapprehension. The monies accounted for have been expended and plainly cannot be recovered from the recipients. The only recourse, then, is against the trustees. It is quite true that a fiduciary (whether by creation of the parties or by operation of law) can be surcharged for mismanagement. [6] It is also true that the proper groundwork for such imposition is laid by objection or exception to his account. [7] In the case at bar the impropriety asserted lies in the allotment of priorities. It is said that the payment of current expenses may foreclose the satisfaction of the bridge rentals. Incidentally, the County of Allegheny seems quite unwilling to share the preference claimed with other "municipalities of equal rank".

 It is clear that the exceptions are ineffective and therefore properly stricken. Any attempt at surcharge here depends upon two factors, an ultimate insolvency and a negligent (at least) failure to comprehend its imminence. By definition priority is relevant only to insufficiency. In the principal case there is barely an intimation, much less a proof of any such condition. As a matter of fact the trustees' accruals for the claims in litigation seem "only $2,720.05 less than the settlement agreed upon and 3.26% of the cash balance in the hands of the Trustees on May 31, 1939." Furthermore, the appellant does not appear to have thought about the second requisite. So it is maintained that the trustees should not have paid out the monies essential to the continued operation of the Railways because they should have foreseen an ultimate financial inability to meet their liability to the County of Allegheny. When and if the evidence on the points indicated exists and is offered, it may be addressed to subsequent accounts. That is, if the procedure by petition is not felt to be more productive of results. In this discussion we have assumed that the accounts are of legal substance and not merely of bookkeeping form.

The order of the District Court is affirmed.

---

[4] 2 Scott on Trusts, §§ 172, 260; 3 Pomeroy, Equity Jurisprudence, 4th Ed. § 1063, p. 2435; 1 Mechem, Law of Agency, 2d Ed., § 1334, pp. 970, 971; 4 Bogert, Trusts and Trustees, § 962, pp. 2783–2784; Accounts—Duty of Fiduciaries to Keep Adequate Accounts—Procedural Effect of Breach of Duty, 21 Minnesota Law Review 737 (note).

[5] 11 U.S.C.A. § 207, note 196 and cases cited; 11 U.S.C.A. § 75, note 16 and cases cited.

[6] 11 U.S.C.A. § 75, cases cited at p. 124, 1940–41 Supplement.

[7] 2 Remington on Bankruptcy, 3d Ed., § 1138.