**NEW YORK TRUST CO. v. NEW YORK & GREENWOOD LAKE RY. CO.**

No. 8943.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 12, 1945.

Decided July 17, 1946.

As Amended July 23, 1946.

Irwin L. Tappen, of New York City (Autenrieth & Wortendyke, of Newark, N. J., Humes, Buck, Smith & Stowell, of New York City, and Reynier J. Wortendyke, Jr., of Newark, N. J., on the brief), for appellant.

Duane E. Minard, of Newark, N. J. (Hobart, Minard & Cooper, of Newark, N. J., on the brief), for appellee.

Before ALBERT LEE STEPHENS, GOODRICH and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This appeal brings up for review an order of the United States District Court of the District of New Jersey entered April 26, 1945, dismissing a petition by plaintiff and its counsel for a determination and allowance of the reasonable value of services rendered the defendant.

On May 1, 1896, the defendant delivered to the plaintiff as trustee, its prior lien mortgage deed as security for the issuance by the defendant of $1,500,000 limited amount of its prior lien 5% bonds due May 1, 1946. The deed conveyed to the plaintiff in trust all of defendant's property and provided for the usual remedies in case of default on the bonds or of any of the covenants of the mortgage. The clause stressed by appellant reads, in part: "Article XVIII * * * the Trustee and its agents, attorneys and counsel shall be entitled to a reasonable compensation for all services rendered in connection with the trusts hereby created or in pursuance of the provisions of this Indenture. The Railway Company [defendant herein] agrees to pay to the Trustee such compensation and, also, all expenses reasonably incurred by the Trustee hereunder, and the Trustee shall have a lien therefor upon the mortgaged property and the proceeds thereof."

Simultaneously with the delivery of its mortgage, defendant leased all of its property to the Erie Railroad Company for a period of 999 years, the lease providing that Erie had the right and duty to operate defendant's property for the full period contemplated by that instrument. Erie agreed to pay the principal and interest of defendant's bonds to be issued under the mortgage and the outstanding obligations of defendant other than its bonded indebtedness. The defendant assigned all of its rights as lessor in the lease to plaintiff as additional security for its bonds and the plaintiff as trustee of the mortgage and assignee of defendant's lessor rights under the lease was granted full powers to enforce all of defendant's rights against Erie. The defendant thereupon executed and the plaintiff

authenticated and delivered a principal amount of $1,493,900 of defendant's prior lien bonds, each of which bore Erie's endorsed guaranty of principal and interest. Erie then took possession of and operated defendant's property until the year 1938.

On January 18, 1938, Erie, which at the time owned 89.4% of defendant's capital stock, filed a petition to reorganize under Section 77 of the Bankruptcy Act, 11 U.S. C.A. § 205, in the United States District Court, Northern District of Ohio, Eastern Division (hereinafter called the Erie Ohio Court). The petition was granted and trustees for Erie appointed. Plaintiff promptly intervened in that action to protect defendant's lessor rights and the rights of defendant's bondholders. In the course of those proceedings the Erie Ohio Court awarded plaintiff and its counsel several bankruptcy allowances from the Erie estate, based upon that portion of their services which pertained to the Erie proceeding. That these allowances were so predicated was found as a fact by the District Court below.

On December 30, 1940, the Erie Ohio Court approved a Plan of Reorganization for Erie, which made specific provision for Erie's debts and securities, including general claims against Erie. No provision was made for the Greenwood Lake Company bonds, for the latter company was not in reorganization and its bonds were the direct obligation of the present defendant. However, Article O of the Plan gave the Erie Reorganization managers the power to negotiate for the acquisition by Erie of the securities or physical properties of any of its subsidiary lessor corporations.

During the year 1941 the Erie managers unsuccessfully negotiated with a group of Greenwood Lake bondholders for an exchange of new Erie preferred stock, par for par, for the bonds. On December 12, 1941, the Erie trustees rejected the Greenwood Lake lease, and on December 18 of the same year they elected to cease operating the latter's property and to reject Erie's guaranty of the Greenwood Lake bonds. Those decisions were approved by the Erie Ohio Court Order No. 385, filed on December 18, 1941.

Since December 22, 1941, the Erie Railroad Company has been operated by its own board of directors free of control of the Erie Ohio Court. The "Closing Order" of the Ohio Court (dated December 20, 1941) reserved jurisdiction over the exercise by the Erie Reorganization managers of their powers under Article O of the Reorganization Plan, regarding reorganization expenses, claims arising out of rejected executory contracts and certain other matters.

On December 24, 1941, plaintiff filed its bill for foreclosure in the Court below, alleging that no interest had been paid on defendant's bonds since 1938, when Erie entered bankruptcy. Pursuant to plaintiff's application, the District Court appointed receivers of defendant's property on January 21, 1942, and authorized said receivers to take control of and operate defendant's properties on March 5, 1942. The Erie Railroad Company thereafter offered defendant's bondholders the opportunity of exchanging their bonds for new Erie securities and cash, or for cash only. Over a period of years Erie in this way acquired about $1,346,800 principal amount of defendant's bonds, plus $101,700 principal amount of bonds in the open market, leaving a balance of $23,100 face amount of bonds unacquired.

The defendant obtained permission of the Court below to delay the filing of its answer to the foreclosure petition until the outcome of its offer of exchange had been determined. Then on April 3, 1944, the defendant filed its answer, admitting the allegations in the bill except as to interest rates and offering to satisfy its obligations under the mortgage. On April 3, 1944, after hearing, the Court below terminated the action with the decree reciting that there were pending claims "on behalf of the plaintiff against the defendant for the reasonable value of services rendered by it and its counsel and expenses incurred in the administration of the trust estate under the Mortgage * * *." Article VII of the decree reads: "The determination of any claims of the plaintiff for the reasonable value of its services and expenses incurred in the administration of the trust estate under the Mortgage, including the services

and expenses of its counsel in connection therewith, and the costs and allowances of this action, and any claims of the Receiver for a final allowance and reimbursement of his expenses, are hereby reserved without prejudice for further order of the Court. Such claims as hereafter determined shall thereupon constitute a part of the Mortgage indebtedness due from defendant to plaintiff and shall constitute valid and subsisting liens on the mortgaged premises."

On April 28, 1944, plaintiff and its counsel filed their petition asking allowances for the value of their services and for expenses, in connection with the trusts created by the mortgage. The Court dismissed the petition, and from that dismissal this appeal is taken.

The District Judge found, inter alia, that "* * * any obligation to pay any allowances for reasonable compensation under Article XVIII of said mortgage, became and now are, obligations of the reorganized Erie Railroad Company, and are subject to the reserved jurisdiction of the Interstate Commerce Commission to determine and fix the maximum limits, and of the Ohio Court to order the payment, of any such allowance, out of the Erie estate." In refusing to take jurisdiction of the petition, the lower Court held that "* * * the bankruptcy court is paramount. This court is without authority to grant the prayers of the petition filed herein and the petition therefore is dismissed."

The substantial problem on this appeal is which of the two District Courts (Ohio and New Jersey) has authority to pass upon the fees requested. The Erie system, in which the Court below in effect held that the defendant railway is included, has been reorganized in a Section 77 proceeding in the Ohio Court with the latter still retaining control of the matter. The validity of the New Jersey District Court's assumption of jurisdiction in the foreclosure action itself was never challenged. Appellant, urging that the latter tribunal has jurisdiction over defendant's obligation under Article XVIII of the mortgage, states that there is no provision in Section 77 of the Bankruptcy Act giving the Bankruptcy Court authority over a subsidiary of the debtor unless a petition for reorganization is also filed by the subsidiary under Section 77, sub. a.[1] It asserts that the Ohio Erie Reorganization is entirely different from the New Jersey foreclosure of defendant's mortgage and contends that since the defendant is a separate corporation it cannot be brought under the Erie reorganization as no bankruptcy petition has been filed by or for it. In justification of this proposition are cited In re Reorganization of Pittsburgh Rys. Co. (Philadelphia Co. v. Dipple), 3 Cir., 111 F. 2d 932, affirmed 312 U.S. 168, 61 S.Ct 538, 65 L.Ed. 651, and In re Pittsburgh Rys. Co., D.C.W.D.Pa., 60 F.Supp. 600. The Dipple case turned on a question not material to the issue before us. In re Pittsburgh Rys. Co., which is relied on heavily, is in point, and the opinion of the District Court did give strong support to the appellant's proposition. The decision of the District Court, however, has now been reversed by this

---

[1] Section 77, sub. a, of the Bankruptcy Act reads: "Any railroad corporation may file a petition stating that it is insolvent or unable to meet its debts as they mature and that it desires to effect a plan of reorganization. The petition shall be filed with the court in whose territorial jurisdiction such corporation, during the preceding six months or the greater portion thereof, has had its principal executive or operating office, and a copy of the petition shall at the same time be filed with the Interstate Commerce Commission * * *. Upon the filing of such a petition, the judge shall enter an order either approving it as properly filed under this section, if satisfied that such petition complies with this section and has been filed in good faith, or dismissing it, if he is not so satisfied. If the petition is so approved, the court in which such order is entered shall, during the pendency of the proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located, and shall have and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a Federal court would have had if it had appointed a receiver in equity of the property of the debtor for any purpose. * * * The railroad corporation shall be referred to in the proceedings as a 'debtor.' * * *" 11 U.S.C.A. § 205, sub. a.

Court, In the Matter of Pittsburgh Railways Co., 155 F.2d 477, 485. In that case a number of separate corporations operating under a single company since 1902, comprised the City of Pittsburgh transportation system. The operating company alone has been in bankruptcy since 1938, the system functioning since that time under trustees appointed by the Court. Judge Goodrich for this Court said in the opinion: "Our conclusion is that the facts of the present case call for the treatment of this great transportation system as one entity for purposes of reorganization, regardless of the elaborate jig-saw puzzle arrangement of all the underlying companies which have gone into it."

As a major reason for so holding, "the nearly half century of physical operation of this enterprise as a unit, with the interchange of movable property, routes, operating personnel and everything involved on the business side" was emphasized. For other instances where the subsidiary, though not insolvent on its own books, was drawn into the equity receivership or bankruptcy of the parent corporation, see Trustees System Co. of Pa. v. Payne, 3 Cir., 1933, 65 F.2d 103, 107; Commerce Trust v. Woodbury, 8 Cir., 1935, 77 F.2d 478; Central Republic Bank & Trust Co. v. Caldwell, 8 Cir., 1932, 58 F.2d 721; Stone v. Eacho, 4 Cir., 1942, 127 F.2d 284.

Here as in the Pittsburgh litigation we are concerned with the realities of the situation. While public necessity does not enter into the instant matter to the extent it appeared in Pittsburgh Railways, the other existing elements show a far closer connection of Erie with the defendant than between Pittsburgh Railways and its underliers. There has been practical unity between Erie and the defendant since 1896.

Under the 999 year lease from the defendant to Erie, the latter received the right and became bound to operate defendant's property for that period and assumed responsibility for defendant's mortgage bonds and other indebtedness. Erie concededly now owns 95% of the defendant's capital stock. With the approval of the Ohio Court, Erie has satisfied defendant's bond and interest obligations.[2] Plaintiff and its counsel were in the Erie proceeding as general parties and both were allowed fees predicated on that portion of their services to the mortgage trust affecting the Erie Reorganization. Any additional compensation to the plaintiff and its attorneys must come from Erie, for the defendant has nothing.

Under the facts it is apparent that the relationship between Erie and the defendant brings the latter well within the Pittsburgh rule. That being so then despite Article XVIII of the mortgage, the Interstate Commerce Commission and the Erie Ohio Court have jurisdiction over the compensation sought. Reconstruction Finance Corp. v. Bankers Trust Co., 318 U.S. 163, 63 S.Ct. 515, 87 L.Ed. 680, concerned the same sort of controversy. It involved the reorganization of the St. Louis & San Francisco Railway system, of which the Kansas, Fort Scott & Memphis Railway is part and under a mortgage of whose property Bankers Trust Co. was trustee.[3] The indemnity clause in that mortgage is quite similar to Article XVIII of the defendant's mortgage. Bankers Trust filed two petitions for compensation for services as indenture trustee, for counsel fees and for expenses. The sums named and the services recited in the two petitions were identical. In one, the claim was under Section 77, sub. c(12).[4] In the other it was alleged that the services had not been ren-

---

[2] Appellee's brief states that on October 30, 1943, Erie acquired title by deed to all of the property of the defendant and of the latter's two subsidiaries. The appellant having made an independent search concedes that such a deed was made and recorded but denies the validity of the deed, and rightly states that there is no such evidence in the record. This title phase was not before the District Court. It is not properly before us and we have not considered it.

[3] In view of our holding that In the Matter of Pittsburgh Rys. Co. (supra) controls the defendant's status with respect to the Erie reorganization, the circumstance that Fort Scott Railway though retaining its original name was actually owned by the parent corporation, is of no moment here.

[4] Section 77, sub. c(12) reads: "Within such maximum limits as are fixed by the Commission, the judge may make an allowance, to be paid out of the debtor's estate, for the actual and reasonable expenses (including reasonable attorney's

dered in connection with the reorganization but as trustee under the mortgage in performance of its fiduciary duties for the benefit of the trust estate as distinguished from the debtor's estate. These claims and expenses were allowed by the District Court under the latter petition and the Circuit Court affirmed. The Supreme Court reversed this saying through Mr. Justice Roberts, page 168 of 318 U.S., 63 S.Ct. 518, 87 L.Ed. 680: "The subsection [77, sub. c (12)] applies in terms to allowance of claims such as those here in issue. No legislative history is cited to the contrary. The statute deals with other claims arising out of contract and secured by liens fixed or inchoate, and no basis is suggested for excluding the respondent's claim from its sweep."

Plaintiff's point that it has a valid and enforceable lien and contract for payment by the defendant of the value of its services and those of counsel plus expenses is fully covered by the R. F. C. opinion. There the Supreme Court states that: "The statute plainly requires reference to the Commission of claims of the class under consideration, a hearing by that body, the setting of a maximum and action by the court on the footing of the Commission's report." The Court then holds that such procedure does not destroy vested rights but provides a method of appraising and liquidating them.

We think, therefore, that the New Jersey District Court was correct in deciding that it is precluded from determining defendant's contract obligation to the plaintiff. Any further compensation to plaintiff and its attorneys and reimbursement for expenses is a matter for the Interstate Commerce Commission and the Erie Ohio Court under Section 77, sub. c(12). It is true that the allowances heretofore made to plaintiff and its attorneys by the Erie Ohio Court have not been in accordance with the fees that would ordinarily be fixed by an equity court for such services, but as we understand it, the value of those services so passed upon was considered from the standpoint of benefit to Erie alone. In addition, part of the services of the trustee and its attorneys to the defendant, including the foreclosure proceedings in New Jersey, have not been before the Interstate Commerce Commission and the Erie Ohio Court at all. The District Judge recognized this as he did the worth of the services. He said in his opinion: "This presents a situation where in all good conscience the trustee and counsel should be remunerated in fees and allowances commensurate with the results, bearing in mind the high standing of counsel, their dexterity and wisdom and the amount of $1,484,800. of principal which was involved." We appreciate that both plaintiff and its attorneys are perhaps a little tired of sympathy. We would like to assist them materially but that is a matter for the Interstate Commerce Commission and the Erie Ohio Court. We can only say that our independent examination of the record satisfies us that their services have been extremely advantageous to the defendant and its bondholders, and that we have every confidence that the plaintiff and its attorneys will receive the highest possible consideration in their predicament from both the Interstate Commerce Commission and the Erie Ohio Court.

Affirmed.

fees) incurred in connection with the proceedings and plan by parties in interest and by reorganization managers and committees or other representatives of creditors and stockholders, and within such limits may make an allowance to be paid out of the debtor's estate for the actual and reasonable expenses incurred in connection with the proceedings and plan and reasonable compensation for services in connection therewith by trustees under indentures, depositaries and such assistants as the Commission with the approval of the judge may especially employ. Appeals from orders of the court fixing such allowances may be taken to the circuit court of appeals independently of other appeals in the proceeding and shall be heard summarily. The Commission shall, at such time or times as it may deem appropriate, after hearing, fix the maximum allowances which may be allowed by the court pursuant to the provisions of paragraph (12) of this subsection (c) and, after hearing if the Commission shall deem it necessary, the maximum compensation which may be allowed by the court pursuant to the provisions of paragraph (2) of this subsection (c)."