PHILADELPHIA COMPANY ET AL. *v.* DIPPLE ET AL.

Nos. 242 and 243. Argued January 8, 9, 1941.—Decided February 3, 1941.

*Mr. W. A. Seifert,* with whom *Messrs. Lee C. Beatty, Richard W. Ahlers,* and *Hill Burgwin* were on the brief, for petitioners.

*Miss Anne X. Alpern* and *Mr. A. E. Kountz,* with whom *Messrs. Leon Wald* and *Lewis M. Alpern* were on the brief, for respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This case presents a problem similar to that involved in *Palmer* v. *Webster & Atlas National Bank, ante,* p. 156. Here the debtor instituted a reorganization proceeding under § 77B of the Bankruptcy Act (now chapter X of that Act) [1] and the question presented is whether the

---

[1] § 77B was adopted June 7, 1934, 48 Stat. 912, and was amended Aug. 29, 1935, 49 Stat. 965, and Aug. 12, 1937, 50 Stat. 622. By the terms of the Chandler Act adopted June 22, 1938, 52 Stat. 840, 883, the provisions of § 77B were superseded by chapter X of the Bankruptcy Act and that chapter was made applicable, so far as practicable, in cases pending when the Act took effect. The petition in this case was filed May 10, 1938, and the Chandler Act became effective Sept. 22 of that year.

trustees should be directed to pay taxes owed by corporations whose properties the debtor operated under leases and operating agreements and the trustees continued to operate. Although the courts below did not refer to the Act of June 18, 1934,[2] the petitioners' insistence that the decision of the Circuit Court of Appeals is in the teeth of the provisions of the Act and conflicts with the decision of the Circuit Court of Appeals of the Second Circuit in the *Palmer* case caused us to grant certiorari.

The debtor, Pittsburgh Railways Company, has, for many years, possessed and used the properties of some fifty-five street railway companies and has operated those properties, in connection with its own, as a unified street railway system in Pittsburgh, Pennsylvania, and surrounding territory. The debtor obtained possession of the properties of the underlying companies through leases and operating agreements which required the debtor to pay all expenses of operation and maintenance and all the taxes of the underlying companies. The system comprises some 560 miles of track, incline plane railways, cars, car barns, and buildings. The debtor owns 28 miles of the track and owns cars and other property. Pursuant to the terms of the leases and agreements, the debtor has directly paid the expenses of operating, maintenance charges, and all taxes of the underlying companies. After the filing of the debtor's petition under § 77B, its approval, and an order continuing the debtor in possession, the court, June 14, 1938, appointed trustees with authority to maintain, manage, and operate the property in possession of, or owned by, the debtor; to manage and conduct its business; collect the revenues therefrom, and to pay all taxes and assessments due, or to become due, upon property in possession of, or owned by, the debtor. The trustees have since been operating

---

[2] 48 Stat. 993, 28 U. S. C. § 124 (a).

the business, using therein the properties of the under-
lying companies. They have not affirmed or disaffirmed
the leases and operating agreements.

March 10, 1939, the trustees petitioned the District
Court for instructions respecting the payment, as admin-
istration expenses, of taxes assessed against the debtor,
a subsidiary, and the underlying companies.[3] The peti-
tion was referred to a master before whom objections
were filed by the City of Pittsburgh, a creditor, and also
by a creditors' committee, to the payment of the taxes
assessed against the underlying companies. These con-
sisted of Pennsylvania corporate stock taxes, Pennsyl-
vania corporate net income taxes, Pennsylvania corporate
loan taxes, and federal income taxes, some of which ac-
crued and became payable subsequent to the filing of
the petition for reorganization and some of which ac-
crued prior thereto. The present petitioners appeared
before the master and advocated an order for payment
of the taxes.

It appeared from the trustees' petition that they had
on hand an amount sufficient to pay all the taxes as to
which they requested instruction and that none of the
underlying companies had funds with which to pay any
of the taxes assessed against them. The testimony be-
fore the master showed that during the existence of the
unified system no attempt was made to account for the
revenues and operating expenses of individual underlying
companies; that any attempt to account for the revenues
and expenses of individual companies would be very ex-
pensive and the results would not be sufficiently accurate
to form a basis for allocating the items; that it was
impossible to operate each underlying company sepa-
rately so as to ascertain the net earnings of each, and

---

[3] The terms of the order ultimately entered with respect to taxes
of the debtor and its subsidiary are not here drawn in question.

that it was probably impossible to determine what would be the fair proportion of rentals to be paid to the various underlying companies whose properties were utilized by the debtor and are now utilized by the trustees. There was testimony that it was impracticable at the time of the hearing for the trustees to state what properties of underlying companies would be embraced in the contemplated plan of reorganization.

In his report, the master recommended that the trustees be directed not to pay taxes assessed against the underlying companies at the present time. This recommendation was supported by a finding that it was uncertain that any of the leases would be affirmed by the trustees and that, in the absence of evidence that the net earnings of each underlying company equalled its taxes, payment of taxes might result in preferment or overpayment. Furthermore, the master found that claims of the debtor against certain of the underlying companies might extinguish any existing equities in the properties of the latter.

After a hearing on exceptions to the master's report, and after receiving a recommendation from the trustees as to what taxes of the underlying companies should be paid, the District Court entered an order that the bulk of the taxes of the underlying companies should be paid by the trustees. The decree was predicated upon the fact that the system had been operated as a unit for many years; that all income derived from the lines of the underlying companies had been kept in one fund, and that it was equitable that the taxes of the underlying companies be treated as taxes of the debtor.

Upon an appeal by the creditors' committee and by the City of Pittsburgh, the Circuit Court of Appeals reversed the order of the District Court so far as it applied to the taxes of the underlying companies.[4] That court held

---

[4] 111 F. 2d 932.

that the debtor's undertaking to pay the taxes of the underlying companies was merely a portion of the consideration for the use of their property and was, therefore, a rental obligation and not a tax liability. The argument was pressed upon the court that the separate corporate entities of the underlying companies should be disregarded. In view of the fact that none of the underlying companies had filed petitions for reorganization, and thus subjected themselves to the jurisdiction of the court, the Circuit Court of Appeals held that, until affirmation of the leases and operating agreements by the trustees, their sole obligation was to pay a reasonable amount for use and occupation which could not be in excess of the net earnings derived from the operation of each property and could not be ascertained until it was determined what property was being used, the extent of the use, and the net earnings derived from it or its value.

The petitioners challenge the decision on the ground that it is contrary to the terms of the Act of June 18, 1934,[5] which directs that a trustee appointed by a court of the United States who is authorized to conduct any business, or does so, shall be subject to all state and local taxes applicable to the business; and on the further ground that it is violative of accepted principles of equitable administration of estates in receivership or reorganization.

The situation here differs from that disclosed in the *Palmer* case in that § 77B contains no provision requiring the debtor to continue to operate the business of a lessor upon rejection of the lease. It further differs in that, here, the trustees have neither affirmed nor disaffirmed the leases and operating agreements. Another difference is that, in the present instance, none of the lessors or underlying companies is in reorganization.

---

[5] *Supra,* Note 2.

Notwithstanding the fact that § 77B gives no specific authority to trustees in reorganization to reject burdensome leases or contracts, it is well settled that they have that right and are accorded a reasonable time within which to exercise it. If, in the opinion of the officers of the underlying companies, a reasonable time has expired those companies are not without redress. They may declare a forfeiture of the leases and abrogate the agreements for nonperformance on the part of the trustees, or they may apply to the District Court to compel an election by the trustees, to affirm or disaffirm. In the meantime, if the situation were such as to permit a proper calculation of the amount due for use and occupation, it would be proper for the court to order the trustees to pay a reasonable sum to be treated as a payment for use and occupation in the event that the leases and agreements are disaffirmed or, on account of rent, in the event they are affirmed. But this record furnishes no basis for such a calculation. The master has found, and the finding is not challenged, that there are no data available from which it can be determined what is the value of the various underlying properties or what is the fair value of their use. It is evident that the debtor has welded these underlying properties into one system in such fashion that a single route or a single passenger ride may involve the use of a number of the underlying companies' properties. Ascertainment of a proper apportionment of the receipts of the system as a whole to the respective contributions of the underlying companies' properties is obviously almost an impossible task. Moreover, since the underlying companies are simple contract creditors, an overpayment to any one of them might work a preference as against other such creditors, including the City of Pittsburgh and the tort claimants who are respondents here.

In the light of these facts, it becomes evident that the Act of 1934 has no application. The trustees are operating the business of the Pittsburgh Railways Company, a corporation of Pennsylvania. The District Court has ordered them to pay the taxes due by that corporation and by its wholly owned subsidiary, a bus company. In that aspect the order is not attacked. But the trustees are not operating the business of the various underlying companies. It may well be that the only business those companies have is to collect or enforce payment of the rentals and considerations due them under the respective leases and operating agreements. But, even so, that businees is not the business of the Pittsburgh Railways Company and the trustees are not trustees of any such business.

What has been said in the *Palmer* case need not be amplified in this case. It is plain that the Act of 1934 is inapplicable.

The petitioners recognize that the authorities cited by them in which courts having charge of receiverships or of reorganization proceedings under § 77B have ordered the payment of taxes by a receiver or by trustees dealt only with the taxes of the corporation represented by the receiver, or for whose business the trustees were appointed. They contend, however, that the same principle ought to apply here because the system operated by the Pittsburgh Railways Company is a unified system. They urge that the business is a single business. They show that for thirty-six years prior to the filing of the petition the identity of the lines of the underlying companies has been obliterated by the creation of a unified system of railway transportation and they say that the whole business should be treated as that of the Pittsburgh Railways Company now conducted by its trustees in reorganization. But, as we have said, the underlying companies' relation to the Pittsburgh Railways Company

is that of creditor and debtor and no principle of equity justifies ignoring that relation when, so to do, might adversely affect the claims of other creditors.

For these reasons we hold the judgment of the Circuit Court of Appeals was right and should be affirmed.

*Affirmed.*