**PLYMOUTH MILLS, INC., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

Civ. A. No. CV–92–4652.

United States District Court,
E.D. New York.

Feb. 13, 1995.

---

Bill S. Light, Jaffe, Segal & Ross, New York City, for plaintiff.

Silvia M. Lederman, F.D.I.C., New York City, for defendant.

### MEMORANDUM AND ORDER

TRAGER, District Judge:

The plaintiff, Plymouth Mills, Inc., had leased for several years office space to the Community National Bank and Trust Company of New York. On November 8, 1991, the bank was declared insolvent by the Office of the Comptroller of the Currency. On that same date, the Federal Deposit Insurance Corporation (FDIC) was appointed the receiver of the bank, and the FDIC or Chemical Bank, to whom the FDIC had provided an option on the insolvent bank's loan portfolio, used the leased premises until approximately the end of May 1992 when the insolvent bank's business was concluded there. Although Chemical Bank declined the option in January 1992, it remained and continued to have the loans serviced at the premises, at the FDIC's request, until April 23, 1992, while the FDIC purportedly sought a new buyer for the loans. The rent for the premises was paid by the FDIC or Chemical Bank until the premises were vacated, as the FDIC repudiated the lease, effective May 31, 1992, by a letter to Plymouth dated May 4, 1992.

In this suit, Plymouth seeks to collect the remainder of the rent due on the lease (the lease did not expire until September 30, 1994), and contends that the FDIC's breach of the lease constitutes a taking under the Fifth Amendment. Plymouth also alleges in its complaint claims for physical damage to the leased premises, and for converted fixtures.

Plymouth moves for partial summary judgment, to require the FDIC to pay the rent in arrears. The FDIC has cross-moved for summary judgment to have dismissed the complaint in its entirety. For the reasons set forth below, the court denies Plymouth's motion for partial summary judgment, and grants in part the FDIC's cross-motion.

### I. Background

This case arose under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (codified in title 12 and other titles of the United States Code), which was enacted to address the financial circumstances of the numerous failed savings and loans throughout the country. See H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 291–312 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 87–108 (history of the savings and loan industry and review of the purposes and major aspects of the Act). The motions in this case raise issues about two features of FIRREA. First, FIRREA requires that a claimant must file an administrative claim with the FDIC before it seeks damages in district court. 12 U.S.C. § 1821(d). This is a jurisdictional requirement. Heno v. FDIC, 20 F.3d 1204, 1207 (1st Cir.1994); Office and Professional Employees Int'l Union, Local 2 v. FDIC, 962 F.2d 63, 66 (D.C.Cir.1992); Resolution Trust Corp. v. Elman, 949 F.2d

624, 627 (2d Cir.1991); *Coleman v. FDIC,* 826 F.Supp. 31, 32 (D.Mass.1993); *Capital Data Corp. v. Capital Nat'l Bank,* 778 F.Supp. 669, 674, 677–78 (S.D.N.Y.1991).

Second, FIRREA empowers the FDIC as receiver or conservator[1] to repudiate or disaffirm leases and other contracts so long as the FDIC repudiates the contract within a "reasonable period." 12 U.S.C. § 1821(e)(2). For contracts or leases repudiated timely, FIRREA has limited the damages available to a claimant. Generally, if the lease was repudiated timely, rent could be demanded only up until the time the lease effectively was disaffirmed. The lessor may not collect future rent. § 1821(e)(4); *Resolution Trust Corp. v. Ford Motor Credit Corp.,* 30 F.3d 1384, 1387–88 (11th Cir.1994); *Resolution Trust Corp. v. Cedarminn Bldg. Ltd. Partnership,* 956 F.2d at 1449. Under the language of the Act, other compensatory damages were limited to the time the FDIC was appointed as receiver, except if certain specified contracts were at issue. § 1821(e)(3).

Critically, thus, the FDIC, when presented with an administrative claim, must have repudiated the subject contract within a "reasonable period" to have preserved FIRREA's damage limits. In this case, the parties disputed whether Plymouth filed sufficient administrative claims for all of the relief it has sought in this lawsuit, and whether the FDIC timely repudiated the subject lease.

## II. *Administrative Claims*

On November 10, 1991, two days after it was appointed receiver, the FDIC sent notice to Plymouth that proofs of claim had to be submitted to the FDIC by February 21, 1992, the bar date. Plymouth filed a proof of claim on February 20, 1992, in which it asserted that the FDIC had not timely repudiated the lease, and demanded $328,125 for rent due on the lease, as well as relief for the damages allegedly done to the premises.

In the May 4, 1992 letter in which the FDIC informed Plymouth that the lease was

repudiated, the FDIC notified Plymouth that if it wished to have this disaffirmance administratively reviewed, it had to file a proof of claim by June 5, 1992. Plymouth did not thereafter file a proof of claim in which it contested the timeliness of the disaffirmance.

 The FDIC has conceded, nevertheless, that Plymouth's February 1992 proof of claim, in which Plymouth alleged that the FDIC failed to have repudiated the lease timely, met the requirements of the administrative claims review process insofar as Plymouth has sought judicial review of the timeliness of the disaffirmance of the lease and its demand for future rent. The FDIC has not argued that Plymouth was required, by the May 4th notice, to file another proof of claim with respect to the timeliness of the disaffirmance. However, with respect to Plymouth's claims of property damage and converted fixtures, the FDIC moved for summary judgment as it contended that Plymouth's February 1992 proof of claim was insufficient. Although, in that proof of claim, Plymouth noted generally its "damages to premises," just as it had asserted the untimeliness of the disaffirmance, the FDIC considered the claims for physical damages to the leased premises infirm for lack of specificity, because these claimed damages, as well as Plymouth's claims for converted fixtures, allegedly were based on events which occurred after the February 21, 1992 bar date.

The court disagrees with the FDIC's argument. On June 4, 1992, Plymouth sent a letter to the FDIC which discussed the damages which the premises allegedly sustained, and the items allegedly converted. In a recent case, indeed, the FDIC conceded that for damages which arose post-bar date, the claimant's post-bar date detailed letters would be deemed to have satisfied the administrative claims review process. *Heno v. FDIC,* 20 F.3d 1204 (1st Cir.1994). Thus, based on Plymouth's February 1992 proof of claim, and its June 4, 1992 letter, Plymouth

1. The FDIC may be appointed as a conservator or receiver pursuant to 12 U.S.C. § 1821(c). A receiver winds up the bank's affairs, while a conservator attempts to restore the bank to viability. 12 U.S.C. § 1821(d)(2)(D)–(E); *1185 Avenue of the Americas Assocs. v. Resolution Trust Corp.,* 22 F.3d 494, 497 (2d Cir.1994); *Resolution Trust Corp. v. Cedarminn Bldg. Ltd. Partnership,* 956 F.2d 1446, 1453 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992).

has satisfied the administrative claims review process.

## III. *Reasonable Period Standard*

Plymouth sought summary judgment on its claim that the lease was repudiated untimely under the "reasonable period" standard contained in § 1821(e)(2), and demanded in its motion damages for rent unpaid to date. The FDIC cross-moved for summary judgment, and claimed that the lease was in fact timely repudiated under the "reasonable period" standard. FIRREA did not further define this timeliness clause. *Resolution Trust Corp. v. Cedarminn Bldg. Ltd. Partnership*, 956 F.2d 1446, 1455 (8th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992). However, legislative history indicated that bankruptcy law was a model for FIRREA's receivership/conservatorship scheme. *Resolution Trust Corp. v. Diamond,* 18 F.3d 111, 122 (2d Cir.) ("12 U.S.C. § 1821(e) was 'closely modeled on parallel provisions of section 365 of the Bankruptcy Code.'") (quoting S.Rep. No. 101–19, 101st Cong., 1st Sess., at 314), *vacated and remanded on other grounds sub nom., Solomon v. Resolution Trust Corp.,* — U.S. ——, 115 S.Ct. 43, 130 L.Ed.2d 5 (1994). *See also 1185 Avenue of the Americas Assocs. v. Resolution Trust Corp.,* 22 F.3d 494, 497 (2d Cir.1994) ("we note that Chapter 3 of the Bankruptcy Code provides a helpful analogy" to the authority of a FIRREA receiver or conservator to repudiate contracts); *Unisys Finance Corp. v. Resolution Trust Corp.,* 979 F.2d 609, 611 (7th Cir.1992) (FIRREA receivership scheme parallels bankruptcy law); *Office and Professional Employees Int'l Union, Local 2 v. FDIC,* 962 F.2d 63, 68 (D.C.Cir.1992) (court looks to bankruptcy law to construe FIRREA's claims procedure); *Monument Square Assocs., Inc. v. Resolution Trust Corp.,* 792 F.Supp. 874, 876 (D.Mass.1991) (court analogizes FIRREA receiver's power to repudiate to that of a bankruptcy trustee).

In *Resolution Trust Corp. v. Cedarminn Bldg. Ltd. Partnership,* the Eighth Circuit explained that FIRREA "and its legislative history emphasize that the powers granted RTC under FIRREA parallel the powers granted conservators or receivers under the former law." 956 F.2d at 1453. The court went on to note that "[i]t has been recognized for at least a century that receivers may repudiate contracts and leases." *Id.* (citing *Sunflower Oil Co. v. Wilson,* 142 U.S. 313, 322, 12 S.Ct. 235, 237, 35 L.Ed. 1025 (1892)). Bankruptcy trustees historically have had the power to repudiate contracts, and this "[o]ption involved not only a privilege but also a duty to ascertain within a reasonable period of time whether or not there was a possible profit in the contract for the estate." 2 *Collier on Bankruptcy* ¶ 365.01 & n. 3 (15th ed.1994) (citing *Sunflower Oil Co.*).

> Under the Bankruptcy Act of 1898, the trustee in reorganization proceedings or the debtor-in-possession had a reasonable time to decide whether to accept or reject an unexpired lease. *Philadelphia Co. v. Dipple,* 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651 (1941); *In re United Cigar Stores Co. of America,* 89 F.2d 3, 6 (2d Cir.1937) (Swann, J.); *In re Chicago Rapid Transit Co.,* 129 F.2d 1, 7 (7th Cir.), *cert. denied,* 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547 (1942); *In re Gulfco Investment Corp.,* 520 F.2d 741 (10th Cir.1975). Cases under the 1898 Act remain good law under the new Code, because Congress considered, and rejected, changing then existing law by imposing time limits on reorganizing debtors.

*Theatre Holding Corp. v. Mauro,* 681 F.2d 102, 105 (2d Cir.1982) (per curiam). Furthermore, "[w]hat constitutes a reasonable time is left to the bankruptcy court's discretion in the light of the circumstances of each case." *Id.* Although at one point a ninety-day period was proposed as a time limit for a FIRREA receiver or conservator to have exercised the power to have contracts repudiated, the final statute "[i]n conformity with the Senate bill ... eliminated the express 90–day restriction" in favor of the "reasonable period" standard, "which follows the common law approach." *Resolution Trust Corp. v. Cedarminn Bldg. Ltd. Partnership,* 956 F.2d at 1455 n. 13.

While the "reasonable period" standard has been utilized in bankruptcy law, the pres-

ent Bankruptcy Code has particularized the time period in which a trustee had to have accepted or rejected a contract. Under 11 U.S.C. § 365(d)(1), Chapter 7 trustees were given sixty days to have assumed or rejected a contract (if the trustee failed to act in time, the contract was deemed rejected), whereas trustees under Chapters 9, 11, and 13, pursuant to § 365(d)(2), were subjected to the common law "reasonable period" standard. *Theatre Holding Corp. v. Mauro*, 681 F.2d at 104–05. In 1984 Congress amended the Bankruptcy Code and provided, with respect to commercial leases for which the debtor was the lessee, a sixty day time bar (on default, the lease was deemed rejected), which applied to cases under any chapter of the Code. 11 U.S.C. § 365(d)(4), *discussed in In re Wedtech*, 72 B.R. 464, 469 (Bankr. S.D.N.Y.1987).

Although a FIRREA receiver may perform a role similar to a Chapter 7 trustee, in that both liquidate assets, whereas a FIRREA conservator is more akin to a Chapter 11 trustee, in that both attempt to restore a financially burdened entity to viability, *1185 Avenue of the Americas Assocs.*, 22 F.3d at 497–98, Congress has not promulgated in FIRREA, unlike in the Bankruptcy Code, different time periods for reorganizers and liquidators to have accepted or rejected contracts. Similarly, Congress has not provided in FIRREA, as it has in the Code, that the time periods under which a reorganizer had to act with respect to leases, depended on whether the lease was for commercial or noncommercial property. The common law "reasonable period" standard, while now restricted in applicability under the Code, was chosen by Congress in FIRREA as an inclusive timeliness measure under which the timeliness of all contract disaffirmances would be reviewed.

Thus, in light of Congress's design in FIRREA, in which it patterned the disaffirmance powers of receivers and conservators on bankruptcy law, and indeed, modelled the "reasonable period" standard from well-settled bankruptcy principles, the factors which have been considered in bankruptcy law as relevant under the "reasonable period" standard, should be applied to review the timeli-

ness of a disaffirmance by a FIRREA conservator or receiver. *See generally Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (Court borrowed limitations period from the Clayton Act to apply to civil RICO enforcement suit, as the latter statute was patterned on the former).

The "reasonable period" standard, fundamentally, is equitable in nature. *See In re GHR Energy Corp.*, 41 B.R. 668, 673 (Bankr. D.Mass.1984) (court reviews request to impose reasonable period, based on "its inherent powers of equity"); *In re Midtown Skating Corp.*, 3 B.R. 194, 197 (Bankr.S.D.N.Y. 1980) (rights of creditor/leaseholder to require debtor-in-possession to act within a reasonable time "drawn from th[e] court's equity powers"). The standard requires the court to consider the landlord's need for certainty as to when it may seek to lease the premises to another tenant, and the needs of the FIRREA conservator or receiver to facilitate its management of the insolvent bank and to preserve the insolvent bank's assets. *See id.* at 196 (creditor/leaseholder moved for relief to obtain "a time certain" when it could re-lease the space, whereas debtor claimed the premises was necessary to its effort to have its business rehabilitated). Thus,

> the court must take into account the nature of the interests at stake, the balance of hurt to the litigants, the good to be achieved, the safeguards afforded those litigants, and whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary.

*Id.* at 198. *Accord, In re Dunes Casino Hotel*, 63 B.R. 939, 949 (D.N.J.1986) (*Midtown Skating Corp.* factors considered on request that reasonable time be set); *In re GHR Energy Corp.*, 41 B.R. 668 (Bankr. D.Mass.1984) (court applied factors articulated in *Midtown Skating Corp.*, and noted that "the complexity of the case [was] also a factor in determining what [was] reasonable"); *In re Lionel Corp.*, 23 B.R. 224, 225 (Bankr.S.D.N.Y.1982) (court followed criteria set forth in *Midtown Skating Corp.* when moved to set a reasonable time). *See also Resolution Trust Corp. v. Cedarminn Bldg. Ltd. Partnership*, 956 F.2d at 1455 (court

ruled that prejudice or lack thereof was a factor on landlord's claim that FIRREA receiver untimely repudiated leases); *Monument Square Assocs., Inc. v. Resolution Trust Corp.*, 792 F.Supp. 874, 879 (D.Mass. 1991) (on challenge of FIRREA receiver's disaffirmance of lease, the court noted that "Plaintiff has not indicated that RTC acted in bad faith, nor has it pointed to any other circumstances to indicate that RTC acted unreasonably").

Plymouth has relied principally on evidence that the FDIC learned in late January 1992 that its efforts to get Chemical Bank to take over the leased premises had failed. From this, Plymouth has contended that the FDIC's notice of disaffirmance in May 1992, approximately three months later, was thus untimely because in Plymouth's view, after Chemical Bank declined the option, the FDIC knew then that the lease would be repudiated. The FDIC, on the other hand, maintained that in light of Chemical Bank's refusal to have assumed the loan portfolio and the lease, it still needed the premises to have the insolvent bank's loans serviced while it searched for a new purchaser. The loans numbered in the thousands, with a value in excess of $300 million; and the FDIC claimed that if the service on the loans was disrupted, the value of the loans would have diminished rapidly.

■ Based on the record submitted, however, the court has found that the arguments proffered by both parties were, at least in part, unsubstantiated. Neither party submitted anything other than conclusory claims with respect to the time the FDIC reasonably could have issued its notice of disaffirmance of the lease. Neither party, for instance, submitted any evidence about the complexities involved in the service of the loans, from which the court could have found an absence of genuine disputes about the feasibility of a disaffirmance soon after

Chemical Bank declined to have assumed the lease.

Moreover, even if the FDIC reasonably could have issued its notice of disaffirmance in February or March of 1992 combined with a delayed removal date from the premises, Plymouth conspicuously has not submitted any evidence that it would have had significantly greater opportunities to re-let the premises if it had received formal notice of the disaffirmance at that time, as opposed to May 1992.[2] The gap between the time the FDIC sent its notice of disaffirmance, and the time Plymouth claimed it should have received notice, at most was approximately three months, a period which hardly demonstrated by itself such harm to Plymouth's ability to have located a new tenant, from which the court could have found on summary judgment that the FDIC was indisputably unreasonable. FIRREA, notably, has not specified the number of days of advanced notice of disaffirmance which the FDIC must have provided to landlords.

Furthermore, Plymouth failed to have provided any evidence that the FDIC deliberately or otherwise misled Plymouth with respect to the status of the leased premises. Indeed, in the FDIC's responses to Plymouth's interrogatories, which Plymouth submitted as an exhibit with its motion for partial summary judgment, the FDIC claimed that it notified Plymouth orally in February 1992 that the premises would be vacated.[3]

Likewise, neither has the FDIC shown conclusively that its activities with respect to the disaffirmance of the lease were reasonable under the circumstances. The court is mindful of the important duties which the FDIC performs under FIRREA, to address the savings and loan fiasco and to stem financial losses. "Congress passed FIRREA as emergency legislation to resolve expeditiously the 'monumental problems involved with the unprecedented costs' of the savings and loan crisis." *Resolution Trust Corp. v. Ce-*

---

**2.** At oral argument, plaintiff's counsel made vague statements about the prospects Plymouth has had for the premises.

**3.** This statement was not contradicted by Plymouth in its papers, although Plymouth's counsel, at oral argument, seemed to have claimed that

such a statement was never provided by the FDIC. However, pursuant to Fed.R.Civ.P. 56(c), this material issue should have been rebutted with evidence, not merely with an attorney's disclaimer at oral argument.

*darminn Bldg. Ltd. Partnership,* 956 F.2d at 1456 (quoting H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 104). Nevertheless, the FDIC has not indisputably established that an earlier formal notice of disaffirmance of the lease would have been unfeasible. Even if the FDIC had not yet located a purchaser for the loans, no concrete evidence was provided which showed that if the FDIC moved the loan service center out of the leased premises, it would have been substantially prejudiced, or in fact that the service of the loans would have been so disrupted such that their value would have diminished rapidly.[4] Another material issue of course was what efforts the FDIC made to keep Plymouth informed of the status of the leased premises before it issued its formal notice of disaffirmance. *See supra* note 3 and accompanying text.

Thus, in sum, neither party has submitted a sufficient record such that the court can decide on summary judgment the timeliness of the disaffirmance of the lease under the "reasonable period" standard. In particular, issues with respect to the balance of harm have been raised which must be resolved at trial. Accordingly, the court denies both parties motions for summary judgment on the timeliness of the FDIC's disaffirmance of the lease.

## IV. *Fifth Amendment Claim*

Plymouth alleged in its complaint that the FDIC's disaffirmance of the lease constituted an impermissible taking under the Fifth Amendment of the Constitution. The Eleventh Circuit recently rejected such a claim in *Resolution Trust Corp. v. Ford Motor Credit Corp,* 30 F.3d 1384, 1388–89 (11th Cir.1994). The court noted that although FIRREA has economic effects, "the impact is not of the type that normally rises to the level of unconstitutionality." *Id.* at 1388. *See also Pageland 29 Ltd. Partnership v. FDIC,* No. 91–1858–LFO, 1992 WL 391377, at *6, 1992 U.S.Dist. LEXIS 19231, at *15–16 (D.D.C. Dec. 14, 1992) (" 'While the federal

government cannot take property without due process of law, a "breach of contract is neither a confiscation of property nor a taking of property without due process of law." ' ") (quoting *Atlantic Mechanical, Inc. v. RTC,* 1992 WL 10277, at *3, 1992 U.S.App. LEXIS 904, at *9 (4th Cir. Jan. 27, 1992)) (quoting *Shawnee Sewerage & Drainage Co. v. Stearns,* 220 U.S. 462, 471, 31 S.Ct. 452, 455–56, 55 L.Ed. 544 (1911)). Accordingly, the court grants the FDIC summary judgment on Plymouth's Fifth Amendment takings claim.

## V. *Conclusion*

The court declines to grant summary judgment to either party, except to the FDIC on Plymouth's taking claim. Inasmuch as the court will need to conduct a trial to resolve this case, and in light of Plymouth's demand for a jury trial, the court grants the FDIC leave until March 31, 1995, to move to strike Plymouth's jury demand, if the FDIC believes that this jury demand is infirm.

SO ORDERED.

---

4. The FDIC has not clearly stated how it ultimately handled the loans. In its interrogatory answers, it claimed that a third-party servicer eventually took over the loans, whereas at oral argument, counsel for the FDIC indicated that the FDIC never located a buyer for the loans, and instead moved the service center out of the leased premises to one of its own offices.