**CENTRAL BUFFALO PROJECT CORPORATION, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Empire of America Federal Savings Bank; Federal Deposit Insurance Corporation, as Receiver of Empire Federal Savings Bank of America; and Federal Deposit Insurance Corporation, as Manager for the FSLIC Resolution Fund, Defendants.**

No. 91–CV–824C(M).

United States District Court,
W.D. New York.

July 8, 1997.

---

Falk & Siemer (Alvin M. Glick, of Counsel), Buffalo, NY, for Plaintiff.

Saperston & Day (Charles C. Swanekamp, of Counsel), Buffalo, NY, for Defendants.

## DECISION AND ORDER

CURTIN, District Judge.

### *BACKGROUND*

In this case, brought under the Federal Deposit Insurance Act, 12 U.S.C. § 1821(e), the parties have each filed *in limine* motions. Specifically, plaintiff, Central Buffalo Project Corporation ("Central Buffalo"), is seeking a determination precluding defendants from asserting as a defense that plaintiff must establish that it was prejudiced by defendants' delay in repudiating the subject leases before it may recover damages in this action (Item 59). If the court decides to allow the defendants to assert this defense or at least to raise the issue of prejudice at trial, plaintiff seeks permission to present evidence, including expert testimony, that it was prejudiced by defendants' delay. Defendants seek a determination that plaintiff is barred from claiming damages after October 31, 1995, the date plaintiff sold the building in which the subject property is located (Item 67).

The parties have submitted several briefs and affidavits in support of and in opposition to the pending motions *in limine,* and they appeared for oral argument on these motions on July 1, 1997. This case was bifurcated, with the liability bench trial scheduled to commence on July 14, 1997.

### *FACTS*

Plaintiff is a Delaware Corporation that owned and operated the Main Place Tower, an office building located in downtown Buffalo, during the time period relevant to this claim, up until October 31, 1995. Plaintiff leased office space to Empire Federal Savings Bank of America ("Old Empire"), formerly known as Empire of America FSA, Erie County Savings Bank, and Erie Savings Bank, for many years, starting in November 1966. Between November 1966 and March 1985, plaintiff and Old Empire executed and

entered into five separate leases (the "subject leases"), constituting the entire leasehold space rented by Old Empire and comprising approximately 217,356 square feet of space. By their terms, two of the subject leases expired on December 31, 1994, and the remaining three were to expire on June 30, 2019.

On January 24, 1990, the Office of Thrift Supervision ("OTS") appointed the Resolution Trust Corporation ("RTC") conservator of Old Empire. On February 27, 1990, the OTS appointed the RTC as receiver for Old Empire, organized Empire of America Federal Savings Bank ("New Empire"), and appointed the RTC conservator of New Empire. On February 28, 1990, the RTC, as receiver for Old Empire, entered into a purchase and assumption agreement with New Empire transferring the right, title, and interest in and to substantially all of Old Empire's assets to New Empire. On March 23, 1990, the RTC assigned the five subject leases from Old Empire to New Empire and notified plaintiff that the assignment of the leases had been accepted. On September 28, 1990, the OTS appointed the RTC receiver of New Empire. As a result of its appointments by the OTS, RTC, by operation of law, succeeded to all rights, title, powers, and privileges of both Old Empire and New Empire, and of any stockholder, member, account holder, depositor, officer, or director of either institution with respect to the institutions' assize, including the subject leases.

Also on September 28, 1990, the RTC entered into a purchase and assumption agreement with Key Interim Savings Bank FSB of Buffalo ("Key Bank") which contained a 90–day option giving Key Bank 90 days from the date of association closing, September 28, 1990, to accept assignment of the subject leases. This period ran through December 28, 1990. On December 17, 1990, M & T Bank, pursuant to a sub-agreement with Key Bank, notified plaintiff and the RTC that it was not accepting assignment of the subject leases. On December 20, 1990, Key Bank notified plaintiff and the RTC that it was not accepting assignment of the subject leases from the RTC. On March 28, 1991, six months after its appointment as receiver and over three months after its receiving notice from Key Bank and M & T Bank that they would not accept assignment of the leases, the RTC notified plaintiff that it was repudiating the subject leases, pursuant to the RTC's statutory grant of authority under 42 U.S.C. § 1821(e), effective June 1, 1991.[1]

Plaintiff first filed an administrative claim with the RTC challenging its repudiation of the subject leases. The RTC denied plaintiff's administrative claim. Plaintiff then filed the present action on December 18, 1991, naming Old Empire, New Empire, and the RTC as defendants. Although plaintiff originally set forth several separate causes of action seeking various forms of relief, plaintiff's remaining claim is that the RTC's attempted repudiation of the subject leases was ineffective because it was not completed within a "reasonable period" of time after the appointment of the RTC as conservator or receiver for both Old Empire and New Empire, as required by statute.[2] Plaintiff is seeking damages of $39,655,436.00, which include all rents and related expenses payable pursuant to the terms of the leases, plus attorneys' fees, costs, and interest.

The RTC was dissolved on December 31, 1995, in accordance with the provisions of the Resolution Trust Corporation Act, 12 U.S.C. §§ 1331a(m)(1)-(2). At that time, the assets and liabilities of the RTC, in its corporate capacity, were transferred to the Federal Deposit Insurance Corporation ("FDIC"), which serves as manager of the FSLIC Resolution Fund. 12 U.S.C. § 1821a(a)(1). Pursuant to 12 U.S.C. § 1441a(m)(1), the FDIC succeeded the RTC as receiver of both Old Empire and New Empire, and thereby suc-

---

1. Plaintiff frequently refers to this period in terms of days, rather than months. Thus, plaintiff contends that the RTC repudiated the leases 181 days after its appointment as receiver, 101 days after receiving notice from M & T Bank, and 98 days after receiving notice from Key Bank.

2. Plaintiff initially set out several additional causes of action, seeking injunctive and declaratory relief. However, plaintiff withdrew some of its original causes of action and this court dismissed one of plaintiff's causes of action on summary judgment (*See* Item 40).

ceeded the RTC in this action (*See* Item 48). On June 21, 1996, the court amended the caption of the case to reflect this statutory succession and the substitution of defendants (Item 50).

After conducting some discovery, the parties filed cross-motions for summary judgment (Items 30 and 33). Each side argued that it was entitled to judgment as a matter of law on the question of whether the RTC's repudiation was both lawful and timely under 12 U.S.C. § 1821(e). In his report and recommendation denying both motions for summary judgment on this cause of action, which was adopted by this court on April 11, 1996 (see Item 49), Magistrate Judge Maxwell found that "a question of fact exists as to whether the delay in repudiation of the leases by the RTC was reasonable, considering the particular facts of this action" (Item 40, pp. 8–9). Following this decision, the parties attempted to negotiate a settlement. Once it became evident that the parties could not agree to a negotiated resolution of this case, the court set a date for the liability phase of this non-jury trial.

## DISCUSSION

### I. *Plaintiff's Motion Regarding Proof of Prejudice*

#### A. *Relevance of Prejudice*

Plaintiff has brought its motion *in limine* anticipating that at trial defendants will attempt to argue that plaintiff must prove that it was prejudiced by the RTC's delay in repudiating the subject leases in order to establish defendants' liability. Plaintiff seeks an order precluding defendants from asserting such a defense, making two separate arguments in support of its position. First, plaintiff contends that neither 12 U.S.C. § 1821(e), nor the cases which have construed it, require that a successful plaintiff establish prejudice. Second, plaintiff asserts that even if the court finds that the issue of prejudice is a proper defense in this action, defendants waived their opportunity to raise this defense by failing to raise it in their responsive pleadings.

Defendants oppose plaintiff's motion, arguing that the party to a repudiated contract has the affirmative burden to demonstrate that it experienced actual prejudice in order to be successful in asserting that the timing of the repudiation was unreasonable under 12 U.S.C. § 1821(e)(2). They contend that the three federal cases which deal with the question of the timing of repudiation all specifically identify prejudice as a necessary prerequisite to a finding of reasonableness. Defendants assert that prejudice is not an affirmative defense that they should have included in their answer to plaintiff's complaint.

■ Upon careful review of the arguments on both sides and the case authority on which the parties rely, the court finds that prejudice is an important factor going towards the reasonableness determination; however, the court does not believe that proof of actual prejudice is a condition precedent to recovery under 12 U.S.C. § 1821(e). Both *Resolution Trust Corporation v. CedarMinn Building Limited Partnership*, 956 F.2d 1446 (8th Cir.1992), and *Plymouth Mills, Inc. v. Federal Deposit Insurance Corporation*, 876 F.Supp. 439 (E.D.N.Y.1995), demonstrate that courts have treated prejudice as one of many indicia of the reasonableness or unreasonableness of the timing of repudiation. Despite defendants' impassioned attempts to persuade the court otherwise, the court does not read either decision as requiring plaintiff to demonstrate actual prejudice. Plaintiff is correct in arguing that both courts' discussions of prejudice were merely dicta. The courts include prejudice as part of a longer list of relevant factors. Never do they explicitly state that prejudice or lack thereof is a threshold question. Furthermore, the Central District of California in *Corporate Plaza Co. v. RTC* (Item 67, Exhibit A) did not treat prejudice or lack thereof as a condition precedent. It merely noted that the lack of prejudice to the lessor as a result of the delay was one of the reasons why it was able to find that the RTC had repudiated the subject lease within a reasonable period.

■ The court agrees with defendants and finds that actual prejudice is not an affirmative defense that defendants should have included in their answer to plaintiff's complaint. Prejudice or lack thereof is not

included in the list of possible affirmative defenses included in Rule 8(c), plaintiff has not pointed to any case or statutory authority which establishes that prejudice or lack thereof ought to be treated as an affirmative defense, and general policies of fairness and avoidance of undue surprise do not warrant treating prejudice or lack thereof as an affirmative defense. Defendants are correct in noting that plaintiff had control of the information as to whether it had been prejudiced by defendants' acts, at least throughout the pleading stage, and that plaintiff had reason to know that actual prejudice would be a factor in the ultimate reasonableness inquiry.

Thus, the court hereby denies plaintiff's motion for an order precluding defendants from asserting actual prejudice as a defense (Item 59). Nevertheless, the court does not believe that prejudice is a condition precedent to recovery under the statute. Actual prejudice is one of the indicia of reasonableness or unreasonableness of the timing of the RTC's repudiation of the subject leases, and the court will consider the arguments of both sides in deciding whether the RTC's repudiation in this case was done in a reasonable period of time.

### B. Use of Expert Testimony to Demonstrate Prejudice

Plaintiff contends that if the court finds that prejudice is an issue suitable for trial, then plaintiff wants to call two experts, James Militello and Howard Shultz, to testify about the local commercial real estate market and how the RTC's delay in repudiating the subject leases prejudiced plaintiff (Item 59, ¶ 21). On April 3, 1997, plaintiff included these two individuals in its list of expert witnesses that they intend to call at trial (Item 64). This disclosure outlines the basis of each individual's expertise and includes both of their resumes.

Defendants strongly oppose plaintiff's request that it be allowed to offer expert testimony on the issue of prejudice (Item 68, pp. 4–5). They contend that the essence of the issue of prejudice revolves around whether the plaintiff landlord was materially prejudiced by virtue of repudiating the subject leases 87 days after plaintiff contends the

repudiation should have taken place. Defendants argue that whether or not plaintiff missed any leasing opportunities is not a matter for expert testimony, but rather for testimony by plaintiff itself.

Because the court has determined that actual prejudice is an indicia of the reasonableness or unreasonableness of the timing of the RTC's repudiation of the subject leases, the court believes that plaintiff should be allowed to offer expert testimony in support of its position that it was prejudiced by the RTC's delay in repudiation. Rule 702 of the Federal Rules of Evidence instructs that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The standard for admissibility of expert testimony is helpfulness, not necessity. *See* 4 *Weinstein's Federal Evidence*, § 702.02[1] (Matthew Bender 2d ed.). The trial judge has broad discretion to admit or exclude expert testimony under the test of "helpfulness," or after evaluating the expert's qualifications. *Id.* As Judge Weinstein instructs, "[b]ecause of the Federal Rules' emphasis on liberalizing expert testimony, doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless strong factors such as time or surprise favor exclusions." *Id.,* § 702.04[1].

The court believes that expert testimony can be helpful in this case. Because this is going to be a bench trial, the potential risk of confusion is less significant. The fact that plaintiff disclosed its intention to call expert witnesses to prove actual prejudice in the event that this court denied its motion to preclude defendants from advancing lack of prejudice as a defense as early as the middle of February 1997 convinces the court that defendants have had plenty of time to research the backgrounds of the proposed witnesses and prepare a strategy to handle these witnesses. Furthermore, Fed.R.Civ.P. 26(a)(2)(C) merely requires that the disclosure of the identity of any experts to be called at trial be made at least 90 days before

the trial date. Plaintiff has clearly satisfied this rule by filing its list of proposed expert witnesses on April 3, 1997 (Item 64).

Consequently, the court hereby grants plaintiff's motion (Item 59) permitting it to offer evidence of prejudice at trial, including, but not limited to, expert testimony.

## II. *Defendants' Motion Regarding Limiting Damages*

Defendants filed a cross motion *in limine* seeking a determination that plaintiff is barred from claiming damages after October 31, 1995 (Item 67, pp. 16–18; Item 69, pp. 5–6). Plaintiff sold all of its interest in the subject building on October 31, 1995. Defendants argue that any damages that plaintiff may have sustained are cut off as to the date of the sale of the subject building. They assert that it is important to settle this damages issue in advance of the damages portion of the trial because the issue bears on (1) the quantum of proof that will be necessary at trial, and (2) the potential settleability of the case.

At oral argument, the parties agreed that it is not necessary to decide this motion at this time. The court instructed the parties at that time that it would consider their arguments on this issue if these issues remain relevant following the resolution of the liability phase of this action.

### CONCLUSION

For the foregoing reasons, this court denies plaintiff's motion (Item 59) insofar as plaintiff seeks an order precluding defendants from asserting as a defense that plaintiff must establish actual prejudice due to the RTC's failure to repudiate the subject leases within a reasonable period. The court instructs the parties that prejudice is one indicia of the reasonableness or unreasonableness of the timing of the RTC's repudiation, not a condition precedent to recovery, as defendants argue. The court grants plaintiff's motion allowing it to offer evidence of prejudice at trial, including, but not limited to, expert testimony.

During its review of the issues and authority relating to the factors relevant to the reasonableness of the timing of the RTC's repudiation of the subject leases, the court queried whether the Supreme Court's decision in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), restricts this court's power of review of the agency's action. The court hereby directs the parties to be prepared to present their positions as to whether and how *Chevron* applies to the present case.

The court declines to address defendants' cross motion (Items 67–68) *in limine* seeking a determination that plaintiff is barred from claiming damages after October 31, 1995, at this time. If these issues remain relevant following the court's determination of liability in this case, then the court will address them before the parties are scheduled to return for the damages phase.

So ordered.